

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NOS. 02-09-00266-CR
### 02-09-00268-CR

EX PARTE JOSEPH P. DANGELO

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON REHEARING

------------

We grant the State's motion for rehearing, we withdraw the opinion issued in this case on June 17, 2010, and we substitute the following opinion in its place. In two points, appellant Joseph P. Dangelo appeals the trial court's denials of his preconviction applications for a writ of habeas corpus. We affirm in part and reverse and remand in part.

**Background Facts**

In 2004, a grand jury indicted appellant with four sex-related felony offenses against a child who was younger than fourteen years old. In February 2008, appellant entered into a plea agreement in which he received written admonishments, waived statutory and constitutional rights, and pled guilty only to injury to a child, which is not by statutory language a sex-related offense and which, as charged in appellant's amended indictment, is a third-degree felony.[1] *See* Tex. Penal Code Ann. § 22.04(a)(3), (f) (Vernon Supp. 2010). The trial court deferred adjudication of appellant's guilt for injury to a child and placed him on community supervision for seven years.

The original terms of appellant's community supervision prohibited him from contacting the complainant of his crime in any manner and precluded his unsupervised access to any child under seventeen years old (except for one specifically designated child); the terms did not require him to complete sex offender treatment.[2] However, in May 2008, the trial court signed an amendment

---

[1]Someone handwrote a fifth count on appellant's indictment that contains language related to the injury to a child offense. Appellant and his counsel signed the indictment below the fifth count.

[2]A document titled "Conditions of Community Supervision," which appellant signed and which was filed on February 26, 2008, states that the trial court could "at any time during the period of community supervision alter or modify" the conditions. Appellant's brief does not contain an issue challenging the trial court's general authority to modify his community supervision terms.

2

to appellant's community supervision terms.[3] The amendment included provisions that precluded his participation in several sex-related acts and required him to "[a]ssume responsibility for [his] offense," submit to a sex offender treatment evaluation "as directed by the supervision officer," complete psychological sex offender counseling, and "[s]ubmit to . . . and show no deception on any polygraph examination . . . as directed by the Court or supervision officer." The trial court signed another amendment in January 2009 that required appellant to restart his sex offender treatment "with PSY as directed by the supervision officer" but dismissed the State's petition for the trial court to proceed to adjudication of his guilt.[4] Appellant filed objections to the amended terms.

On March 4, 2009, appellant's counsel sent a letter to Psycho Therapy Services; the letter stated in part,

> Certainly we object to any required treatment programs which lie outside those required to and have no relationship to the crime which [appellant] pled to, or relate to conduct which is not itself criminal, or requires conduct that is not reasonably related to the

---

[3]The record does not show why the trial court amended appellant's community supervision.

[4]The State's first petition to proceed to adjudication was filed in December 2008. That petition is not contained in the record on appeal. In April 2009, the State filed a second petition, alleging that appellant's community supervision should be revoked only because he has not completed sex offender treatment. Appellant filed a motion to quash the petition on grounds similar to those that he raised in the writ applications that are the subject of this appeal. The record does not contain any order resolving the State's second petition.

3

future criminality of Mr. Dangelo and does not serve the statutory ends of his deferred adjudication.

. . . .

Mr. Dangelo has no objections to polygraph examinations which in the course of your program he may be subjected to. However, Mr. Dangelo has Fifth Amendment protection against making any incriminating statements and has a right to so state, relating to any conduct for which he has not pled or for which he is not on deferred adjudication. Thus, he will not answer any questions relating to sexual conduct which he did not commit and for which he has not been accused.

An affidavit from appellant was attached to the letter; the affidavit states that he had been told by one of Psycho Therapy Services' employees that "as part of the Sexual Treatment Program [appellant] was required to admit any sexual offense." The affidavit also explains that appellant had been notified that if he did not intend to answer questions regarding sexual offenses, he should not attend the therapy session.

On March 27, 2009, appellant filed an application for a writ of habeas corpus, asking the court to "dismiss the added conditions of probation." In the application, he contended that the trial court's community supervision conditions violate his rights against compelled self-incrimination under the Texas and federal constitutions and that the trial court's requiring him to undergo sex offender treatment is not authorized by the code of criminal procedure because he did not plead guilty to a sex-related offense.

On July 10, 2009, the trial court declared that appellant's bond was insufficient and ordered a warrant to be issued for his arrest because of his

4

failure to submit to a polygraph exam; he was arrested the same day. Five days later, appellant filed two more applications for writs of habeas corpus. Those applications asserted that he had a constitutional right not to answer the questions that were proposed to be asked in the polygraph exam.

Appellant attached a July 9, 2009 letter to both applications that was addressed from The Polygraph Science Center to a probation officer regarding appellant's refusal to submit to the exam. The letter explained that appellant's probation officer had referred him to the center for the exam and that appellant had arrived at the center but had refused to answer the following questions: (1) "Since you have been on probation, have you had [sic] violated any of the conditions?"; (2) "Since you have been on probation, have you had sexual contact with any persons younger than 17?"; (3) "Since you have been on probation, have you tried to isolate any child for sexual purposes?"; and (4) "Since you have been on probation, have you intentionally committed any sexual crimes?"

The State filed responses to appellant's writ applications, attaching offense reports and other documents that detailed the sexually-related alleged facts that resulted in his original four sex offense charges. In June 2009, the State filed proposed findings of fact and conclusions of law, and the next month, the trial court adopted those findings and conclusions, denied appellant's writ applications, and stated that his bond was insufficient and that he would be

5

released from jail only to take the scheduled polygraph exam.[5]  Appellant filed notices of these appeals.

### Standard of Review

Although appellant filed his writ applications under multiple constitutional and statutory provisions, we must review the applications under article 11.072 of the code of criminal procedure, which "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision."  Tex. Code Crim. Proc. Ann. art. 11.072, § 1 (Vernon 2005); *see Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008) ("[I]t is clear that the Legislature intended Article 11.072 to provide the exclusive means by which the district courts may exercise their original habeas jurisdiction . . . in cases involving an individual who is either serving a term of community supervision or who has completed a term of community supervision.").

Habeas corpus is an extraordinary writ used to challenge the legality of one's restraint.  Tex. Code Crim. Proc. Ann. art. 11.01 (Vernon 2005); *Ex parte Bennett*, 245 S.W.3d 616, 618 (Tex. App.—Fort Worth 2008, pet. ref'd).  Absent a clear abuse of discretion, we must affirm the trial court's decision on whether to

---

[5]Because of a motion that he filed in this court during these appeals, the trial court has released appellant from confinement through a bond that requires him to report to his supervision officer once a week and be supervised on house arrest, among other conditions.  Appellant's release does not require dismissal of these appeals.  *See* Tex. Code Crim. Proc. Ann. art. 44.35 (Vernon 2006).

6

grant the relief requested in a habeas corpus application. *Ex parte Karlson*, 282 S.W.3d 118, 127–28 (Tex. App.—Fort Worth 2009, pet. ref'd); *Ex parte Bruce*, 112 S.W.3d 635, 639 (Tex. App.—Fort Worth 2003, pet. dism'd). In reviewing the trial court's decision, we view the evidence in the light most favorable to the ruling and accord great deference to the trial court's findings and conclusions. *Karlson*, 282 S.W.3d at 127; *see Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).

## Appellant's Fifth Amendment Right

In his first issue, appellant contends that the trial court's decision to declare his bond insufficient (and to therefore incarcerate him) because he refuses to answer the questions that were proposed in the polygraph exam violates his right to remain silent and not incriminate himself under the Texas and federal constitutions. Trial courts have wide discretion to impose reasonable community supervision terms that are in the defendant's, the victim's, and society's best interests. *See Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006); *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999) (describing the granting of supervision as a "*privilege*, not a right"), *cert. denied*, 529 U.S. 1088 (2000); *Belt v. State*, 127 S.W.3d 277, 280 (Tex. App.—Fort Worth 2004, no pet.) (explaining that we review imposition of community supervision conditions under an abuse of discretion standard); *see also Flores v. State*, 904 S.W.2d 129, 130 (Tex. Crim. App. 1995) (stating that there "is no fundamental right to receive probation"), *cert. denied*, 516 U.S. 1050 (1996). Requiring a polygraph

7

examination may be a reasonable condition of community supervision. *See Ex parte Renfro*, 999 S.W.2d 557, 560 & n.4 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see also Leonard v. State*, 315 S.W.3d 578, 580 (Tex. App.—Eastland 2010, pet. granted) ("Polygraph examinations are regularly imposed as a condition of community supervision for sex offenders.").

The Texas legislature has explained that the purpose of the community supervision statute is to remove "from existing statutes the limitations, *other than questions of constitutionality*, that have acted as barriers to effective systems of community supervision in the public interest." Tex. Code Crim. Proc. Ann. art. 42.12, § 1 (Vernon Supp. 2010) (emphasis added). Thus, the trial court's broad authority to create community supervision terms does not extend to imposing terms that violate a defendant's constitutional rights as balanced with the goals of the defendant's probation. *See Flores*, 904 S.W.2d at 131 (examining the constitutionality of a trial court's community supervision decision); *Tamez v. State*, 534 S.W.2d 686, 692 (Tex. Crim. App. 1976) (invalidating a probation condition because it was unconstitutional); *see also Briseño v. State*, 293 S.W.3d 644, 648 (Tex. App.—San Antonio 2009, no pet.) (stating that a community supervision condition "is not necessarily invalid simply because it affects [the defendant's] ability to exercise constitutionally protected rights") (quoting *Lee v. State*, 952 S.W.2d 894, 900 (Tex. App.—Dallas 1997, no pet.) (en banc)). As the Supreme Court stated in *Griffin v. Wisconsin*,

> To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions."
>
> These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. . . . Supervision, then, is a "special need" of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large. That permissible degree is not unlimited, however . . . .

483 U.S. 868, 874–75, 107 S. Ct. 3164, 3169 (1987) (citation omitted) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 2600 (1972)).

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."[6] U.S. Const. amend. V; *see Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (explaining that the Fifth Amendment applies in state court proceedings); *Chapman v. State*, 115 S.W.3d 1, 5 (Tex. Crim. App. 2003) ("It is a fundamental tenet of Texas and federal constitutional jurisprudence that every

---

[6]Along with the Fifth Amendment to the United States Constitution, appellant cites a provision of the Texas constitution that states that an accused "shall not be compelled to give evidence against himself." Tex. Const. art. I, § 10. However, he does not cite authority to explain how this provision provides greater rights than its federal constitutional counterpart. Thus, we will examine appellant's points under authority related to the rights granted by the federal constitution. *See Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997); *Dowthitt v. State*, 931 S.W.2d 244, 254 n.4 (Tex. Crim. App. 1996); *see also Carroll v. State*, 68 S.W.3d 250, 253 n.3 (Tex. App.— Fort Worth 2002, no pet.) (op. on remand) ("The self-incrimination clause of Article I, Section 10 of the Texas Constitution gives no greater rights than does the Fifth Amendment of the United States Constitution.").

person has the right to avoid self-incrimination by exercising the privilege provided him by the Fifth Amendment and the Texas Constitution."). The Fifth Amendment privilege not only extends to answers that would in themselves support a conviction, "but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute." *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S. Ct. 1252, 1254 (2001) (quoting *Hoffman v. United States*, 341 U.S. 479, 486, 71 S. Ct. 814, 818 (1951)).

The United States Supreme Court has examined a probationer's Fifth Amendment right against compelled self-incrimination.[7] *See Minnesota v. Murphy*, 465 U.S. 420, 422, 104 S. Ct. 1136, 1139 (1984). The Court's opinion revealed the following background facts.

Prosecutors charged Murphy for criminal sexual conduct, but he pled guilty to a reduced charge of false imprisonment, and the trial court placed him on a three-year probation term. *Id.* at 422, 104 S. Ct. at 1139. Conditions of his probation required him to participate in sex offender treatment and be truthful with his probation officer "in all matters." *Id.* He eventually told a sex offender counselor that he had previously committed a murder that was unrelated to the charge he had pled guilty to, and the counselor told Murphy's probation officer of the confession. *Id.* at 423, 104 S. Ct. at 1140. At Murphy's next meeting with his

---

[7]Texas courts are bound by the United States Supreme Court's interpretation of the federal constitution. *Taylor v. State*, 10 S.W.3d 673, 681 (Tex. Crim. App. 2000); *State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

probation officer, the officer informed Murphy about the information that she had received, and Murphy admitted that he had committed the murder. *Id.* at 424, 104 S. Ct. at 1140. Based on the admission, a grand jury indicted him for murder. *Id.* at 425, 104 S. Ct. at 1141.

Murphy sought to suppress testimony about his confession on Fifth Amendment grounds, and although the trial court denied his motion to do so, the Minnesota Supreme Court reversed. *Id.* at 425, 104 S. Ct. at 1141. In reversing the Minnesota Supreme Court, the United States Supreme Court stated that the Fifth Amendment prohibition against compelled self-incrimination "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant" but also "'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Id.* at 426, 104 S. Ct. at 1141 (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 322 (1973)). In the course of ultimately deciding the case on the ground that Murphy did not timely assert his Fifth Amendment rights, the Court explained,

> A defendant does not lose [Fifth Amendment protection] by reason of his conviction of a crime; notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are inadmissible in a subsequent trial for a crime other than that for which he has been convicted. . . .
>
> . . . .
>
> . . . If [a defendant asserts Fifth Amendment rights], he "may not be required to answer a question if there is some rational basis

11

for believing that it will incriminate him, at least without *at that time* being assured that neither it nor its fruits may be used against him" in a subsequent criminal proceeding.

*Id.* at 426, 429, 104 S. Ct. at 1141–43 (quoting *Maness v. Meyers*, 419 U.S. 449, 473, 95 S. Ct. 584, 598 (1976) (White, J., concurring)).

While the Court therefore indicated that a probationer's Fifth Amendment right against compelled self-incrimination would be violated by authorities requiring him to answer questions "that would incriminate him in a pending or later criminal prosecution," it also stated,

> The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination *in a separate criminal proceeding*. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. *Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation.* Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. *It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.*
>
> . . . *[N]othing in the Federal Constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation . . . .*

12

*Id.* at 435 & n.7, 104 S. Ct. at 1146 & n.7 (citations omitted) (emphasis added). Thus, if a condition of a defendant's probation requires the defendant to admit to an offense that could lead to criminal charges independent of those that the defendant is serving probation for, the defendant has a Fifth Amendment right to not answer such questions.[8] But to the extent that a state asks questions only about probation violations that do not comprise independent offenses, the defendant does not have a Fifth Amendment right to not answer those questions. *Id.*; *see Chapman*, 115 S.W.3d at 6 (stating that a probationer has a right "against self-incrimination concerning statements that would incriminate him for some other offense"); *Bridwell v. State*, 804 S.W.2d 900, 906 (Tex. Crim. App. 1991) (citing *Murphy* for the proposition that the privilege against self-incrimination is "not available to [a] probationer questioned by [a] probation officer"); *see also United States v. Locke*, 482 F.3d 764, 767 (5th Cir. 2007) (holding that the defendant's Fifth Amendment right against compelled self-incrimination had not been infringed because his answers to a polygraph examination "could not serve as a basis for a *future criminal prosecution*. A probationer may only invoke the Fifth Amendment privilege if a truthful answer

---

[8]A probationer could be compelled to talk about independent offenses if the State grants the probationer use-immunity. *See Chapman*, 115 S.W.3d at 7 & n.28.

would incriminate the probationer by exposing him to prosecution for *a different crime*.") (emphasis added).[9]

As explained above, appellant's first point is based in part on the trial court's incarcerating him because of his refusal to answer the following questions on Fifth Amendment grounds: (1) "Since you have been on probation, have you had [sic] violated any of the conditions?"; (2) "Since you have been on probation, have you had sexual contact with any persons younger than 17?"; (3) "Since you have been on probation, have you tried to isolate any child for sexual purposes?"; and (4) "Since you have been on probation, have you intentionally committed any sexual crimes?"  The first question asks only about community supervision violations, not about independent criminal activity, and appellant therefore does not have a Fifth Amendment right to refuse to answer the question.  *See Murphy*, 465 U.S. at 435 n.7, 104 S. Ct. at 1146 n.7.  Thus, to the extent that the trial court's denials of appellant's writ applications could be based on his refusal to answer the first question, we overrule appellant's first point.

The State has conceded, and we conclude, that the second and fourth questions ask about independent crimes rather than mere community

---

[9]Although they are not binding, we may rely on federal circuit decisions as persuasive authority.  *Mosley v. State*, 983 S.W.2d 249, 256 n.13 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).  Other states have also recognized the Fifth Amendment dichotomy of requiring a probationer to speak about matters related only to the conditions of his probation as opposed to matters related to different crimes.  *See State v. Lumley*, 977 P.2d 914, 919 (Kan. 1999).

supervision violations and that under the authority cited above, appellant has a Fifth Amendment right to refuse to answer those questions. Thus, to the extent that the trial court's denials of appellant's writ applications may be based on his refusal to answer those two questions, we sustain appellant's first point.[10]

The State argues that question three (isolation of a child for sexual purposes) inquires whether appellant committed "a mere probation violation" and that the question poses "no realistic threat of incrimination." However, we conclude that question three exceeds asking only about a violation of appellant's community supervision and provides at least a link in the chain to appellant's responsibility for an independent offense.[11] *See Reiner*, 532 U.S. at 20, 121 S. Ct. at 1254. The penal code states that a person commits the offense of criminal attempt "if, with specific intent to commit an offense, he does an act amounting to

---

[10]The trial court found, based on the letter from The Polygraph Science Center, that appellant was willing to answer the first question but not the other three questions. However, appellant's writ applications do not concede that the first question is proper, and appellant has not yielded on appeal to the State's position that it was proper. Instead, appellant contended during oral argument that a question that asks about probation violations triggers his Fifth Amendment right. The trial court's findings of fact do not address appellant's Fifth Amendment rights in relation to questions one, two, and four; rather, the trial court found that appellant's refusal to answer question three was dispositive of the relief that he requested in the applications. We are addressing the first, second, and fourth questions because, as explained below, we disagree with the trial court's conclusion that appellant does not have a Fifth Amendment right to refuse to answer question three.

[11]We also note that question three is limited time-wise to isolation of a child since appellant's been on probation; thus, the question clearly relates to a potentially new offense.

15

more than mere preparation that tends but fails to effect the commission of the offense intended." Tex. Penal Code Ann. § 15.01(a) (Vernon 2003); *see Yalch v. State*, 743 S.W.2d 231, 233 (Tex. Crim. App. 1988). We conclude that "tr[ying] to isolate any child" could qualify as an "act amounting to more than mere preparation" and that "for sexual purposes" could serve as "specific intent to commit an offense" such as attempted indecency with a child, attempted sexual assault of a child, attempted sexual performance by a child, or other attempted offenses that involve a defendant's act and sexual intent with regard to children. *See* Tex. Penal Code Ann. § 15.01(a), §§ 21.11(a), 22.011(a)(2), 43.25(b) (Vernon Supp. 2010); *cf. Laster v. State*, 275 S.W.3d 512, 516, 522–23 (Tex. Crim. App. 2009) (holding that the evidence was sufficient to prove attempted aggravated kidnapping when a defendant briefly grabbed a young girl by her waist and pulled her with the inferred purpose to secrete her).

Thus, even while giving great deference to the trial court's conclusion that appellant cannot refuse to answer question three on Fifth Amendment grounds, we must overrule that conclusion. To the extent that appellant's first point challenges the trial court's denials of his writ applications as related to his refusal to answer question three, we hold that the trial court abused its discretion by denying the applications and sustain the point.[12]

---

[12]Furthermore, appellant's community supervision may not be revoked for simply asserting his Fifth Amendment right to not answer questions two through four. *See Murphy*, 465 U.S. at 438, 104 S. Ct. at 1148 ("Our decisions have made clear that the State could not constitutionally carry out a threat to revoke

16

Appellant also argues in his first point that the sex offender counseling program requires him to admit "to the sexual crime for which the counselor believes he is being counseled." A term of appellant's community supervision states that he must "[a]ssume responsibility for [his] offense." One of the trial court's findings of fact states, "As part of treatment, [appellant] is required to admit and discuss the facts of this offense."

The State contends that appellant's Fifth Amendment right against self-incrimination does not apply to him discussing the facts of the remaining four indicted offenses because further prosecution of the offenses is barred by double jeopardy and he has "no realistic threat of future criminal prosecution" on the facts comprising the alleged offenses. Furthermore, the State represents that appellant is "safe from additional prosecution" on the underlying facts of this case.

We view these statements as binding concessions that the State will never use the facts relating to the indicted offenses, if any, for a future criminal proceeding on the indicted offenses or new offenses.[13] *See, e.g., Bryant v.*

---

probation for the legitimate exercise of the Fifth Amendment privilege."); *Chapman*, 115 S.W.3d at 6.

[13]The State also represents that appellant "cannot now be prosecuted for any of the . . . indicted offenses." We note that the judicial estoppel doctrine prevents parties from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *See Schmidt v. State*, 278 S.W.3d 353, 358 (Tex. Crim. App. 2009); *Davidson v. State*, 737 S.W.2d 942, 948 (Tex. App.—Amarillo 1987, pet. ref'd) (explaining that judicial estoppel prevents a "party who has taken a position in an earlier proceeding from

17

*State*, 187 S.W.3d 397, 400–02 (Tex. Crim. App. 2005) (holding that a defendant's stipulation that was not entered into evidence was nonetheless a judicial admission that barred him from contesting evidentiary sufficiency). Thus, we conclude that appellant's Fifth Amendment rights do not apply to him discussing the limited facts specifically related to counts one through four of his original indictment because the State may not use those facts in a subsequent criminal proceeding, and he cannot be incriminated based on those facts.[14] *See Chapman*, 115 S.W.3d at 7 & n.28 (explaining that a defendant could be compelled to testify against himself if he was granted immunity that eliminated the threat of incrimination); *Renfro*, 999 S.W.2d at 561 (explaining that the Fifth Amendment privilege applies only when there is a "realistic threat of self-incrimination").

---

taking a contrary position at a later time," and therefore holding that a defendant was prohibited on appeal from contesting the cause of a victim's death when the defendant's counsel conceded at trial that the death was caused by gunshot wounds).

[14]In the trial court, within a response to one of appellant's writ applications, the State claimed that sex offender conditions were appropriate for appellant's community supervision, even though he did not plead to a sex-related offense, because the underlying facts of appellant's case were sexual in nature. In an attempt to prove its claim, the State attached police reports, witness statements, and medical records specifically describing an event that allegedly occurred on July 14, 2004. We conclude that the State's concessions preclude it from prosecuting appellant for any crimes (other than the crime to which he has pled guilty) related to the alleged facts occurring during that event on that date as described in those documents; consequently, appellant may be compelled to discuss only those alleged facts.

In summary, we hold that appellant may not be compelled, over the invocation of his Fifth Amendment right, to participate in any portion of the objected-to community supervision conditions, including the requirement of answering questions two through four of the planned polygraph examination, that would provide a link to his criminal prosecution for any offense unrelated to the injury to a child offense that he pled guilty to.[15] We sustain appellant's first point to the extent that the trial court's community supervision conditions require him to so participate. But appellant may be compelled to discuss the facts particularly related to counts one through four of his indictment because the State may not use those facts in a future criminal prosecution. We overrule appellant's first point to that degree.

### Appellant's Requirement to Attend Sex Offender Treatment

In the title of his second point, appellant argues that the trial court is denying him due process by requiring him to attend any part of sex offender counseling when he has not been convicted of a sex offense. However, the argument in appellant's second point does not assert a constitutional due process denial but relates to whether "the Legislature limited the right to impose

---

[15]We do not express any opinion on whether a trial court's requirement of a probationer to answer questions about independent criminal activity would be constitutional if the probationer agreed to answer such questions as a particular term of his plea bargain agreement and waived his Fifth Amendment rights at the time of the agreement.

19

sex offender counseling to persons convicted of a sex offense."[16]  In other words, while relying on the text of article 42.12 of the code of criminal procedure, appellant argues that there is no statutory authority to support the trial court's decision to require him to attend sex offender counseling when he pled guilty to injury to a child, which is not a sex-related offense.  *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 9A(2) (stating that a person who enters a plea of guilty to one of several specific statutes, not including the injury to a child statute, qualifies as a "sex offender").

As explained above, appellant's writ applications must be reviewed under article 11.072 of the code of criminal procedure.  Tex. Code Crim. Proc. Ann. art. 11.072, § 1; *Villanueva*, 252 S.W.3d at 397.  "An applicant may challenge a condition of community supervision under [article 11.072] only on constitutional grounds."  Tex. Code Crim. Proc. Ann. art. 11.072, § 3(c); *see Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.—Dallas 2005, no pet.) (overruling a challenge in a habeas corpus appeal to requiring the defendant to participate in the Substance Abuse Felony Program as the result of a state jail felony guilty plea because the "challenge d[id] not raise any constitutional issues, only statutory

---

[16]Appellant's writ applications in the trial court likewise do not contain argument specifically related to a violation of due process because of his required submission to sex offender counseling generally.  A defendant may forfeit constitutional complaints by not raising them in the trial court.  *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 904 (2009); *Alexander v. State*, 137 S.W.3d 127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that a due process complaint was forfeited by failure to assert the complaint in the trial court).

ones. Therefore, article 11.072 preclude[d] appellant from bringing this complaint by habeas corpus"); *see also Ex parte Watson*, 601 S.W.2d 350, 352 (Tex. Crim. App. 1980) ("It is well-established that habeas corpus will lie only to review jurisdictional defects or denials of fundamental or constitutional rights.").

Appellant's complaint in his second point focuses on the trial court's allegedly exceeding its statutory authority to impose community supervision conditions rather than on constitutional issues. Appellant does not cite any authority to contend that a trial court's imposition of a community supervision term that is not authorized by article 42.12 of the code of criminal procedure qualifies as a constitutional violation.[17] Thus, we hold that we do not have jurisdiction to consider appellant's statutory complaint in these habeas corpus appeals. *See Villanueva*, 252 S.W.3d at 397; *see also Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002) (distinguishing between constitutional and statutory error); *Ex parte Sadberry*, 864 S.W.2d 541, 543 (Tex. Crim. App.

---

[17]In his response to the State's motion for rehearing, appellant contends that "[s]ubjecting a defendant to sex offender counseling and conditions absent a conviction for a sexual offense violates due process." But the sole case that appellant cites for that proposition contains a narrower holding. Specifically, it states that a parole board cannot impose sex offender conditions on someone who has not been convicted of a sex offense when those conditions are imposed without procedural due process such as an opportunity to contest the conditions at a hearing. *Coleman v. Dretke*, 395 F.3d 216, 225 (5th Cir. 2004), *reh'g en banc denied*, 409 F.3d 665 (5th Cir. 2005), *cert. denied*, 546 U.S. 938 (2005); *see Ex parte Campbell*, 267 S.W.3d 916, 926 (Tex. Crim. App. 2008) ("*Coleman's* holding was about what process must be afforded to the releasee before sex offender conditions may be imposed, not about whether sex offender conditions may be imposed at all."). Neither of appellant's points directly challenge the procedure by which the trial court imposed sex offender conditions.

21

1993) (holding that a habeas corpus proceeding was not the proper avenue to address statutory noncompliance). We dismiss appellant's second point.

## Conclusion

Having sustained part of appellant's first point, to the extent that the trial court's decision to incarcerate appellant was based on his refusal to answer questions two through four of the polygraph examination, we reverse the trial court's denial of his applications for a writ of habeas corpus. We affirm the trial court's denials of his writ applications in all other respects and remand this case to the trial court for further proceedings consistent with this opinion.



TERRIE LIVINGSTON
CHIEF JUSTICE


PANEL: LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DAUPHINOT, J. filed a concurring opinion.

PUBLISH

DELIVERED: December 16, 2010



# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NOS. 02-09-00266-CR**
**02-09-00268-CR**

EX PARTE JOSEPH P. DANGELO

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING OPINION ON REHEARING

----------

I agree with the conscientious majority's holding that Appellant cannot be required to waive his Fifth Amendment right against self-incrimination. I, nevertheless, remain concerned that the record before us does not describe the four discrete acts alleged in the indictment with sufficient specificity to prevent future prosecution and potential double jeopardy violations. My concern is based on the fact that when the State pleads that a sexual offense against a child occurred "on or about" a specific date, the State may prove any such offense that

occurred within the statute of limitations but before the return of the indictment.[1]

Unless the State is required to elect specific offenses, or unless the State is judicially estopped from prosecuting Appellant for any offense that could fall within the conduct described in the indictment and that occurred within the statute of limitations but before the date the indictment was returned, then there is no way for a judge, an accused, a counselor, an attorney, or a polygrapher to know whether the questions that the majority requires Appellant to answer involve offenses that the State is judicially estopped from pursuing.

I agree that the State is judicially estopped from compelling participation in any condition of community supervision that would provide a link to his criminal prosecution for any offense other than the injury-to-a-child offense to which Appellant pled guilty.  I also agree that the State is judicially estopped from prosecuting Appellant for the sexual offenses alleged in the indictment. Unfortunately, I have no idea how anyone will know which sexual acts those are. Because the law permits such temporal vagueness in pleading sexual offenses against children, it would be difficult, if not impossible, for anyone to determine whether Appellant is being required to answer questions concerning offenses for which the State could prosecute him as opposed to offenses which the State is judicially estopped from pursuing.

---

[1]*Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997).

2

Because of these concerns that I have voiced, I concur in the thoughtful opinion of the majority.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: December 16, 2010