IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-0769-11 & PD-0770-11






 Ex parte JOSEPH P. DANGELO, Appellant






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Cochran, J., filed a concurring opinion in which Hervey and Alcala, JJ.,
joined.


O P I N I O N 



 I agree that "appellant may be compelled to discuss the facts particularly related to
counts one through four of his indictment" if "the State may not use those facts in a future
criminal prosecution." (1) But it is entirely possible that appellant could be prosecuted for self-incriminatory, truthful statements concerning the underlying "facts" of the four sex-related
counts that were dismissed when he pled guilty to an injury-to-a-child offense. For example,
a polygrapher might ask whether appellant had committed the same sex offense against the
same alleged victim on some day other than the date specified in the indictment. Or the
polygrapher might ask if appellant had performed some sex act with the alleged victim other
than those acts explicitly listed in the dismissed counts. (2) 

 At a minimum, appellant is entitled to know beforehand exactly what "yes" or "no"
questions the polygrapher wants to ask and then be given the opportunity to consult with his
attorney to determine whether there is any reasonable possibility that the answer to a specific
question might incriminate him. Any invocation of the Fifth Amendment right must be
viewed liberally and in the light most favorable to its legitimacy. (3) A person may be
compelled to answer only if it "is perfectly clear, from a careful consideration of all the
circumstances in the case," that the person "is mistaken in asserting the privilege, and the
answer cannot possibly tend to incriminate [him]." (4) That is a high hurdle to jump. And it
should be, because the constitutional right against self-incrimination is such a fundamental
tenet of our American criminal-justice system.

 The majority concludes that "[a]ppellant has no Fifth Amendment right to refuse to
answer legitimate questions that are a condition of his community supervision regarding
those offenses" in the dismissed counts. (5) True enough, but what questions are "legitimate"? 
In this context, questions are legitimate only if answers to them "cannot possibly tend to
incriminate" appellant for purposes of a new criminal prosecution. (6)

 The Fifth Amendment provides that no person "shall be compelled in any criminal
case to be a witness against himself[.]" (7) In Minnesota v. Murphy, the United States Supreme
Court held that, under long-standing law, "this prohibition not only permits a person to refuse
to testify against himself at a criminal trial in which he is a defendant, but also 'privileges
him not to answer official questions put to him in any other proceeding, civil or criminal,
formal or informal, where the answers might incriminate him in future criminal
proceedings.'" (8) The Supreme Court explained,

 In all such proceedings, "a witness protected by the privilege may rightfully
refuse to answer unless and until he is protected at least against the use of his
compelled answers and evidence derived therefrom in any subsequent criminal
case in which he is a defendant. . . . Absent such protection, if he is
nevertheless compelled to answer, his answers are inadmissible against him in
a later criminal prosecution." (9)

 A judicial requirement that a probationer take a polygraph examination concerning
sexual matters qualifies as a "proceeding" for purposes of the Fifth Amendment right against
self-incrimination. (10) In Murphy, the Supreme Court also concluded that the State may not
make the waiver of the Fifth Amendment right against self-incrimination a condition of
probation. In analyzing whether a "waiver" condition would improperly force Murphy, a
probationer, to choose between incriminating himself and jeopardizing his probation, the
Court stated that

 [o]ur decisions have made clear that the State could not constitutionally carry
out a threat to revoke probation for the legitimate exercise of the Fifth
Amendment privilege. . . . [T]he State submits that it would not, and legally
could not, revoke probation for refusing to answer questions calling for
information that would incriminate in separate criminal proceedings. (11)

 The Court ultimately held that Murphy's probation condition did not improperly
impinge on his Fifth Amendment rights because it did not require him "to choose between
making incriminating statements and jeopardizing his conditional liberty by remaining
silent." (12) Instead, the probation condition merely required Murphy to speak truthfully about
matters relevant to his probationary status. Because the probation condition was silent about
Murphy's freedom to choose not to answer particular questions and "contained no suggestion
that his probation was conditional on his waiving his Fifth Amendment privilege," it did
nothing more than proscribe lies. The probation condition did not require Murphy to speak
if speaking would incriminate him, but, if he did speak, he could be punished for lying.

 Appellant, like Murphy, may have his probation revoked for telling lies to a
polygrapher. (13) But he may not be revoked (or otherwise punished) for invoking his right
against self-incrimination if there is any reasonable possibility that the answers to any
questions posed by a polygrapher could be used in a future criminal prosecution against
him. (14) The State may not force appellant to choose between incriminating himself and losing
his probationary status by remaining silent. However, as the majority correctly concludes,
appellant has lost the Fifth Amendment privilege for the injury-to-a-child offense for which
he has been placed on deferred-adjudication probation and for the specific counts to which
jeopardy attached at the time of his guilty plea. For those discrete and specific offenses, he
must answer. But if the State wishes to compel the answers to any questions that could show
both a probation violation and a new criminal offense, the State must provide use immunity
before compelling any answer. (15) 

 The court of appeals suggested that the State had promised use immunity concerning
any facts relating to the dismissed counts. (16) The State denies that it has done so, (17) and neither
trial nor appellate courts may unilaterally grant use immunity. (18) Thus, appellant may invoke
his right against self-incrimination for any "facts" relating to the alleged victim except the
very precise acts that allegedly occurred on the one specified date. Any other question could
pose a realistic threat of incrimination. (19)

 With these comments, I join the court's opinion. (20)

Filed: June 20, 2012

Publish
1. Ex parte Dangelo, 339 S.W.3d 143, 154 (Tex. App.- Fort Worth 2010) (op. on reh'g).
2. The bar against later prosecution for "extraneous offenses" covered by the indictment
does not apply unless a defendant is actually tried for and convicted of the indicted offense and
he has declined to request an election at trial as to the specific act that the State could rely upon
for conviction. See Rodriguez v. State, 104 S.W.3d 87, 91 (Tex. Crim. App. 2003) (absent
election, evidence of multiple occurrences of an act alleged in the indictment is not "extraneous
offense" evidence; every act for which evidence is presented is covered by the indictment and,
upon conviction, is jeopardy-barred).
3. Hoffman v. United States, 341 U.S. 479, 486 (1951) (the Fifth Amendment right against
compelled self-incrimination "must be accorded liberal construction in favor of the right it was
intended to secure.").
4. Grayson v. State, 684 S.W.2d 691, 696 (Tex. Crim. App. 1984) (quoting Hoffman, 341
U.S. at 486-87, in which the Supreme Court stated, "
To sustain the privilege, it need only be
evident from the implications of the question, in the setting in which it was asked, that a
responsive answer to the question or an explanation of why it cannot be answered might be
dangerous because injurious disclosure could result.").
5. Majority op. at 8.
6. Grayson, 684 S.W.2d at 696.
7. U.S. Const. amend. V.
8. Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S.
70, 77 (1973)); see also Chapman v. State, 115 S.W.3d 1, 7 (Tex. Crim. App. 2003) (probationer
had Fifth Amendment right not to incriminate himself during participation in sex-offender
treatment program, but he failed to assert that privilege when he volunteered self-incriminatory
statements).
9. Murphy, 465 U.S. at 426 (quoting Lefkowitz v. Turley, 414 U.S. at 78).
10. See id. at 422; see also Chapman, 115 S.W.3d at 7.
11. Id. at 438.
12. Id. at 436.
13. Appellant complains that he pled guilty to the injury-to-a-child offense because he
adamantly denied committing any sexual act, and thus he should not "be compelled to submit to
questioning for an offense he did not commit." Appellant's Brief at 8. But appellant cannot be
punished for truthful answers. Whether he did or did not commit the sexual acts with which he
was originally charged, he need only tell the truth.
14. Murphy, 465 U.S. at 437.
15. Murphy, 465 U.S. at 436 n.7 ("
a State may validly insist on answers to even
incriminating questions and hence sensibly administer its probation system, as long as it
recognizes that the required answers may not be used in a criminal proceeding and thus
eliminates the threat of incrimination.").
16. Dangelo, 339 S.W.3d at 153 ("the State represents that appellant is 'safe from
additional prosecution' on the underlying facts of this case. We view these statements as binding
concessions that the State will never use the facts relating to the indicted offenses, if any, for a
future criminal proceeding on the indicted offenses or new offenses.").
17. See State's Brief at 12-13 (setting out the specific dates and discrete acts alleged in the
four dismissed counts and concluding that "it is double jeopardy, and not the concessions of the
State, that prohibits the State from prosecuting Appellant on any of the other counts in the
indictment after he pled guilty to count five.").
18. See Smith v. State, 70 S.W.3d 848, 860-61 (Tex. Crim. App. 2002) (State may offer use
and derivative-use immunity if it needs to compel witness testimony, and that immunity
agreement must be ratified by trial judge, but "[t]he trial court's role is very limited in this
context.").
19. See Murphy, 465 U.S. at 435 n.7.
20. Both appellant and the State have addressed a third issue, but we did not grant review
of appellant's third ground for review.