IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-0769-11 and PD-0770-11






Ex Parte JOSEPH P. DANGELO, Appellant






ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY





 Johnson, J., delivered the opinion for a unanimous Court. Cochran, J., filed
a concurring opinion in which Hervey and Alcalá, JJ., joined.


O P I N I O N



 Pursuant to a plea agreement, appellant pled guilty to the felony offense of injury to a child. 
That offense, alleging that appellant knowingly caused bodily injury to a named child, was
handwritten and inserted as the indictment's fifth count, after four type-written counts that alleged
four sex-related felony offenses against that same named child. (1) In accordance with that plea
agreement and after accepting appellant's plea, the trial court placed him on deferred-adjudication
community supervision for seven years, commencing on February 26, 2008. Appellant signed a
document that stated that the trial court could modify the conditions of supervision at any time
during the period of community supervision. Ex parte Dangelo, 339 S.W.3d 143, 146 (Tex.
App.-Fort Worth 2010)(op. on reh'g).

 The original terms of appellant's community supervision did not require him to complete sex-offender treatment. Id. In May of 2008, three months later, the trial court modified those conditions
to include provisions that required appellant to submit to sex-offender treatment and evaluation, as
directed by his supervision officer, complete sex-offender psychological counseling, and submit to,
and show no deception on, any polygraph examination ordered by the court or his supervision
officer. (2) Id. In December of 2008, the state filed its first petition to proceed to adjudication. In
January of 2009, the trial court again modified appellant's conditions and required appellant to reside
in Tarrant County and to restart his sex-offender treatment, as directed by the supervision officer,
but it dismissed the state's petition to proceed to adjudication of appellant's guilt. Id.

 In March of 2009, appellant's attorney sent to Psycho Therapy Services a letter that stated
appellant's objections to any required treatment programs that lie outside those required or have no
relationship to the crime to which appellant plead or that relate to conduct that is not itself criminal.
Id. The letter also stated that appellant "has no objections to polygraph examinations which in the
course of your program he may be subjected to," but that he "has Fifth Amendment protection
against making any incriminating statements and has a right to so state, relating to any conduct for
which he has not pled or for which he is not on deferred adjudication." Id. at 146-47. Attached to
that letter was an affidavit from appellant stating that he had been told by one of the Psycho Therapy
Services employees that, as part of the sexual-offender treatment program, appellant was required
to admit any sexual offense and that "appellant had been notified that if he did not intend to answer
questions regarding sexual offenses, he should not attend the therapy session." Id. at 147. On April
9, 2009, the state filed its second petition to proceed to adjudication, which alleged that appellant
had violated the terms and conditions of his supervision by failing to complete a sex-offender
evaluation and that he had been discharged from sex-offender treatment without completing it.
Appellant filed a motion to quash the second petition on grounds similar to those raised in the writ
applications that are the subject of this appeal, but "[t]he record does not contain any order resolving
the State's second petition." Id. at 146, n.4.

 Appellant points out that, when he was placed on the seven-year deferred-adjudication
community supervision, the court's order contained no sex-offender conditions or counseling
requirements; it was only when his supervision was transferred to Denton County, where he lived,
that sex-offender conditions were added. His first habeas corpus application objected to these
conditions. Soon after, the state filed a motion to proceed to adjudication, which was subsequently
dismissed, but the condition that required sex-offender counseling was retained.

 In July 2009, the trial court found that appellant's bond was insufficient because he had
refused to take the ordered polygraph tests and answer the questions to which he objected, (3) and it
issued a warrant for his arrest. Id. at 147. (4) Appellant filed additional habeas corpus applications
"assert[ing] that he had a constitutional right not to answer the questions that were proposed to be
asked in the polygraph exam." (5) Id. at 147. The trial court denied relief on these applications.

The Court of Appeals's Opinion

 On direct appeal, appellant filed two separate appeals regarding the same underlying
conviction of injury to a child, both appeals challenging the single deferred-adjudication case but on
slightly different grounds. He asserted that the trial court's decision to declare his bond insufficient,
and thus to incarcerate him because he refused to answer questions that were proposed in the
polygraph examination, denied him due process of law because it required him: 1) "to waive his right
to remain silent"; and 2) "to submit to an unconstitutional order of probation to attend sex-offender
counseling when he has not been convicted of a sex offense." Id. at 148.

 The court of appeals held "that appellant may not be compelled, over the invocation of his
Fifth Amendment right, to participate in any portion of the objected-to community supervision
conditions, including the requirement of answering questions two through four of the planned
polygraph examination, that would provide a link to his criminal prosecution for any offense
unrelated to the injury to a child offense that he pled guilty to." Id. at 154. But it also held that
appellant "may be compelled to discuss the facts particularly related to counts one through four of
his indictment because the State may not use those facts in a future criminal prosecution." Id.

 The court of appeals reversed the trial court's denial of appellant's habeas corpus writ
applications to the extent that the trial court's decision to incarcerate him was based on his refusal
to answer questions two through four of the polygraph examination, but affirmed the trial court's
denials of his writ applications in all other respects. Id. at 155.

Petitions for Discretionary Review

 We granted review of the first two grounds of appellant's petitions for discretionary review. 
Those grounds assert that the court of appeals erred: 1) when it granted immunity to appellant to
require him to answer questions put to him on the allegations in the indictment for which he refused
to acknowledge guilt, and 2) when it held that appellant may be questioned on the indictment
allegations to which no plea was entered. Pursuant to Appellant's brief, those first two grounds "will
be addressed jointly as they cover the same facts and general law."

 Appellant generally complains of the court of appeals's holding that his "Fifth Amendment
rights do not apply to him discussing the limited facts specifically related to counts one through four
of his original indictment because the State may not use those facts in a subsequent criminal
proceeding, and he cannot be incriminated based on those facts." Id. at 153. In ground one, appellant
takes issue with the court of appeals's language about his having immunity from prosecution for the
other counts of the indictment, for which he refused to acknowledge guilt. In ground two, appellant
disputes the court of appeals's holding that he "may be questioned on the indictment allegations to
which no plea was entered." Appellant contends that the court of appeals has no authority to grant
immunity. He also suggests that the court of appeals has denied him the benefit of his plea bargain;
he refused to plead to a sexual offense, consistently denying that he ever committed such an act. 
But he is now facing the choice of either admitting to a crime he did not commit or having his
probation revoked for not admitting it. Appellant asserts that his "reason for accepting the plea
bargain was to avoid this dilemma."

 Citing Minnesota v. Murphy, 465 U.S. 420 (1984), in which the Supreme Court examined
a probationer's Fifth Amendment right against compelled self-incrimination, the court of appeals
stated that "[a] probationer could be compelled to talk about independent offenses if the State grants
the probationer use-immunity." Dangelo, 339 S.W.3d at 151, n.8. The court of appeals also noted
the state's acknowledgment that further prosecution of the remaining four indicted offenses was
barred by double jeopardy and that appellant had no realistic threat of future criminal prosecution
on the facts comprising those alleged offenses. It viewed the state's acknowledgment "as binding
concessions that the State will never use the facts relating to the indicted offenses, if any, for a future
criminal proceeding on the indicted offenses or new offenses." Id. at 153. Accordingly, the court
of appeals concluded that appellant's "Fifth Amendment rights do not apply to him discussing the
limited facts specifically related to counts one through four of his original indictment because the
State may not use those facts in a subsequent criminal proceeding, and he cannot be incriminated
based on those facts." Id. It specifically ruled that "appellant may be compelled to discuss the facts
particularly related to counts one through four of his indictment because the State may not use those
facts in a future criminal prosecution." Id. at 154.

 Appellant asserts that even a defendant on probation "does not lose his right against self
incrimination." He adds that "[a] person does not lose his right to assert his Fifth Amendment rights
as to other offenses for which he has not been convicted by either pleading guilty or otherwise being
convicted of a criminal offense." He cites Minnesota v. Murphy and Chapman v. State, 115 S.W.3d
1 (Tex. Crim. App. 2003), in support of these principles. He maintains that the court of appeals
erred when it accepted the "assurances" of the state that it would not prosecute him for allegations
contained in the indictment and thereby purported to give him use immunity for those crimes, if they
even happened, and thus allowing him to be subjected to possible sanctions for refusing to answer
the questions and possible prosecution for perjury should the state not believe whatever statements
he makes. Appellant also suggests that, if immunity is granted, such immunity goes only to the
actual testimony and not to mere conversation with the prosecution and that the appellate court
cannot grant a general immunity to questioning that is not testimonial.

 The state agrees with appellant that the court of appeals erred in holding that the state had
made "binding concessions" that it would never prosecute appellant based on the other allegations
in the indictment. But the state acknowledges that, because it did not affirmatively waive, dismiss,
or abandon counts one through four of the indictment before the trial court accepted appellant's plea
of guilty to count five pursuant to the plea agreement, jeopardy attached to those counts as well.
Once jeopardy has attached, the state is barred from prosecuting appellant on those counts in the
future, thus appellant cannot now be prosecuted for any of the offenses alleged in the indictment. 
The state maintains that "it is double jeopardy, and not the concession of the State, that prohibits the
State from prosecuting Appellant on any of the other counts in the indictment after he pled guilty to
count five." The state also asserts that, because it cannot prosecute appellant again based on the
allegations in the same indictment, there is no realistic threat for future prosecution, thus appellant
can be required to answer questions regarding other allegations in the indictment after invoking his
Fifth Amendment rights. It concludes that, although the court of appeals erred when it held that the
state had made a binding concession that it would not prosecute appellant for the other allegations,
thus granting some sort of judicial immunity to appellant, the court of appeals came to the correct
conclusion and this Court should affirm.

 In a negotiated-plea proceeding, the issue is joined, and jeopardy attaches when the plea
agreement is accepted by the trial court. Ortiz v. State, 933 S.W.2d 102 (Tex. Crim. App. 1996). The
state quotes from Ortiz that "[i]t is [at the point of acceptance of a plea agreement by the trial court]
that the defendant has a vested interest in the finality of the proceeding" and recognizes that "because
[it] did not affirmatively waive, dismiss, or abandon Counts One, Two, Three, and Four of the
indictment prior to the trial court's acceptance of Appellant's plea pursuant to the plea agreement,
jeopardy attached to those counts as well." State's Brief at 12.

 Appellant correctly states that a probationer retains his Fifth Amendment right against self-incrimination concerning statements that would incriminate him in future criminal proceedings. 
Chapman v. State, 115 S.W.3d at 5. The Fifth Amendment provides that no person shall be
compelled in any criminal case to be a witness against himself and protects the individual, not only
against being involuntarily called as a witness against himself in a criminal prosecution, but also
permits him "not to answer official questions put to him in any other proceeding, civil or criminal,
formal or informal, where the answers might incriminate him in future proceedings." Id., quoting
Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). However, in light of the state's concession that double-jeopardy principles preclude it from prosecuting appellant for the four sex-related offenses set out
in counts one through four, we agree with the court of appeals's determination that "appellant may
be compelled to discuss the facts particularly related to counts one through four of his indictment
because the State may not use those facts in a future criminal prosecution." Dangelo, 339 S.W.3d
at 154. Appellant has no Fifth Amendment right to refuse to answer legitimate questions that are
a condition of his community supervision regarding those offenses. Accordingly, we overrule
appellant's grounds one and two and affirm the judgment of the court of appeals.


Delivered: June 20, 2012

Publish
1. Count one alleged penetration of the child's sexual organ, count two alleged penetration of her anus,
count three alleged touching of her sexual organ, and count four alleged touching of her anus. All of the offenses
were alleged to have occurred on or about July 14th, 2004. The original indictment was filed in the clerk's office on
September 21, 2004. The hand-written addition, count five, is dated February 26, 2008, the same date that appears
on the "unadjudicated judgment."
2. Also, he was prohibited, among other things, from visiting sex-related businesses, internet pornography
sites, social-media sites, or prostitutes, from consumption of alcohol, and from having any contact with three named
persons. He was also subject to the restrictions that define child-safety zones. The court of appeals's opinion states
the May 2008 modification required appellant to "[a]ssume responsibility of [h]is offense . . .." Dangelo, at 146. 
We do not find that phrase in any of the several probation orders.
3. "If Defendant does not participate in polygraph, bond is insufficient." I C.R. 138, PD-770-11.
4. After appellant filed a motion challenging the trial court's arrest warrant in the court of appeals, the trial
court released appellant on a highly restrictive bond.
5. The four questions which appellant refused to answer are: Since you have been on probation, have you: 1)
violated any of the conditions?; 2) had sexual contact with any persons younger than seventeen?; 3) tried to isolate
any child for sexual purposes?; and 4) intentionally committed any sexual crimes? Dangelo, 339 S.W.3d at 147 and
151-52.