

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NOS. PD-0769-11 & PD-0770-11

**Ex parte JOSEPH P. DANGELO, Appellant**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE SECOND COURT OF APPEALS TARRANT COUNTY

**COCHRAN, J., filed a concurring opinion in which HERVEY and ALCALA, JJ., joined.**

### O P I N I O N

I agree that "appellant may be compelled to discuss the facts particularly related to counts one through four of his indictment" *if* "the State may not use those facts in a future criminal prosecution."[1] But it is entirely possible that appellant could be prosecuted for self-incriminatory, truthful statements concerning the underlying "facts" of the four sex-related counts that were dismissed when he pled guilty to an injury-to-a-child offense. For example,

---

[1] *Ex parte Dangelo*, 339 S.W.3d 143, 154 (Tex. App.– Fort Worth 2010) (op. on reh'g).

a polygrapher might ask whether appellant had committed the same sex offense against the same alleged victim on some day other than the date specified in the indictment. Or the polygrapher might ask if appellant had performed some sex act with the alleged victim other than those acts explicitly listed in the dismissed counts.[2]

At a minimum, appellant is entitled to know beforehand exactly what "yes" or "no" questions the polygrapher wants to ask and then be given the opportunity to consult with his attorney to determine whether there is any reasonable possibility that the answer to a specific question might incriminate him. Any invocation of the Fifth Amendment right must be viewed liberally and in the light most favorable to its legitimacy.[3] A person may be compelled to answer only if it "is perfectly clear, from a careful consideration of all the circumstances in the case," that the person "is mistaken in asserting the privilege, and the answer cannot possibly tend to incriminate [him]."[4] That is a high hurdle to jump. And it

---

[2] The bar against later prosecution for "extraneous offenses" covered by the indictment does not apply unless a defendant is actually tried for and convicted of the indicted offense and he has declined to request an election at trial as to the specific act that the State could rely upon for conviction. *See Rodriguez v. State,* 104 S.W.3d 87, 91 (Tex. Crim. App. 2003) (absent election, evidence of multiple occurrences of an act alleged in the indictment is not "extraneous offense" evidence; every act for which evidence is presented is covered by the indictment and, upon conviction, is jeopardy-barred).

[3] *Hoffman v. United States*, 341 U.S. 479, 486 (1951) (the Fifth Amendment right against compelled self-incrimination "must be accorded liberal construction in favor of the right it was intended to secure.").

[4] *Grayson v. State*, 684 S.W.2d 691, 696 (Tex. Crim. App. 1984) (quoting *Hoffman*, 341 U.S. at 486-87, in which the Supreme Court stated, "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it was asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.").

should be, because the constitutional right against self-incrimination is such a fundamental tenet of our American criminal-justice system.

The majority concludes that "[a]ppellant has no Fifth Amendment right to refuse to answer legitimate questions that are a condition of his community supervision regarding those offenses" in the dismissed counts.[5] True enough, but what questions are "legitimate"? In this context, questions are legitimate only if answers to them "cannot possibly tend to incriminate" appellant for purposes of a new criminal prosecution.[6]

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself[.]"[7] In *Minnesota v. Murphy*, the United States Supreme Court held that, under long-standing law, "this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'"[8] The Supreme Court explained,

In all such proceedings, "a witness protected by the privilege may rightfully

---

[5] Majority op. at 8.

[6] *Grayson*, 684 S.W.2d at 696.

[7] U.S. CONST. amend. V.

[8] *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973)); *see also Chapman v. State*, 115 S.W.3d 1, 7 (Tex. Crim. App. 2003) (probationer had Fifth Amendment right not to incriminate himself during participation in sex-offender treatment program, but he failed to assert that privilege when he volunteered self-incriminatory statements).

refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution."[9]

A judicial requirement that a probationer take a polygraph examination concerning sexual matters qualifies as a "proceeding" for purposes of the Fifth Amendment right against self-incrimination.[10]  In *Murphy*, the Supreme Court also concluded that the State may not make the waiver of the Fifth Amendment right against self-incrimination a condition of probation.  In analyzing whether a "waiver" condition would improperly force Murphy, a probationer, to choose between incriminating himself and jeopardizing his probation, the Court stated that

> [o]ur decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege. . . . [T]he State submits that it would not, and legally could not, revoke probation for refusing to answer questions calling for information that would incriminate in separate criminal proceedings.[11]

The Court ultimately held that Murphy's probation condition did not improperly impinge on his Fifth Amendment rights because it did not require him "to choose between making incriminating statements and jeopardizing his conditional liberty by remaining

---

[9] *Murphy*, 465 U.S. at 426 (quoting *Lefkowitz v. Turley*, 414 U.S. at 78).

[10] *See id*. at 422; *see also Chapman*, 115 S.W.3d at 7.

[11] *Id.* at 438.

silent."[12]  Instead, the probation condition merely required Murphy to speak truthfully about matters relevant to his probationary status.  Because the probation condition was silent about Murphy's freedom to choose not to answer particular questions and "contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege," it did nothing more than proscribe lies.  The probation condition did not require Murphy to speak if speaking would incriminate him, but, if he did speak, he could be punished for lying.

Appellant, like Murphy, may have his probation revoked for telling lies to a polygrapher.[13]  But he may not be revoked (or otherwise punished) for invoking his right against self-incrimination if there is any reasonable possibility that the answers to any questions posed by a polygrapher could be used in a future criminal prosecution against him.[14]  The State may not force appellant to choose between incriminating himself and losing his probationary status by remaining silent.  However, as the majority correctly concludes, appellant has lost the Fifth Amendment privilege for the injury-to-a-child offense for which he has been placed on deferred-adjudication probation and for the specific counts to which jeopardy attached at the time of his guilty plea.  For those discrete and specific offenses, he

---

[12] *Id.* at 436.

[13] Appellant complains that he pled guilty to the injury-to-a-child offense because he adamantly denied committing any sexual act, and thus he should not "be compelled to submit to questioning for an offense he did not commit."  Appellant's Brief at 8.  But appellant cannot be punished for truthful answers.  Whether he did or did not commit the sexual acts with which he was originally charged, he need only tell the truth.

[14] *Murphy*, 465 U.S. at 437.

must answer.  But if the State wishes to compel the answers to any questions that could show *both* a probation violation *and* a new criminal offense, the State must provide use immunity before compelling any answer.[15]

The court of appeals suggested that the State had promised use immunity concerning any facts relating to the dismissed counts.[16]  The State denies that it has done so,[17] and neither trial nor appellate courts may unilaterally grant use immunity.[18]  Thus, appellant may invoke his right against self-incrimination for any "facts" relating to the alleged victim except the very precise acts that allegedly occurred on the one specified date.  Any other question could pose a realistic threat of incrimination.[19]

---

[15] *Murphy*, 465 U.S. at 436 n.7 ("a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination.").

[16] *Dangelo*, 339 S.W.3d at 153 ("the State represents that appellant is 'safe from additional prosecution' on the underlying facts of this case.  We view these statements as binding concessions that the State will never use the facts relating to the indicted offenses, if any, for a future criminal proceeding on the indicted offenses or new offenses.").

[17] *See* State's Brief at 12-13 (setting out the specific dates and discrete acts alleged in the four dismissed counts and concluding that "it is double jeopardy, and not the concessions of the State, that prohibits the State from prosecuting Appellant on any of the other counts in the indictment after he pled guilty to count five.").

[18] *See Smith v. State*, 70 S.W.3d 848, 860-61 (Tex. Crim. App. 2002) (State may offer use and derivative-use immunity if it needs to compel witness testimony, and that immunity agreement must be ratified by trial judge, but "[t]he trial court's role is very limited in this context.").

[19] *See Murphy*, 465 U.S. at 435 n.7.

With these comments, I join the court's opinion.[20]

Filed: June 20, 2012
Publish

---

[20] Both appellant and the State have addressed a third issue, but we did not grant review of appellant's third ground for review.