

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0769-11 and PD-0770-11

### Ex Parte JOSEPH P. DANGELO, Appellant

## ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW
## FROM THE SECOND COURT OF APPEALS
## TARRANT COUNTY

**JOHNSON, J., delivered the opinion for a unanimous Court. COCHRAN, J., filed a concurring opinion in which HERVEY and ALCALÁ, JJ., joined.**

## O P I N I O N

Pursuant to a plea agreement, appellant pled guilty to the felony offense of injury to a child. That offense, alleging that appellant knowingly caused bodily injury to a named child, was handwritten and inserted as the indictment's fifth count, after four type-written counts that alleged four sex-related felony offenses against that same named child.[1] In accordance with that plea agreement and after accepting appellant's plea, the trial court placed him on deferred-adjudication

---

[1] Count one alleged penetration of the child's sexual organ, count two alleged penetration of her anus, count three alleged touching of her sexual organ, and count four alleged touching of her anus. All of the offenses were alleged to have occurred on or about July 14th, 2004. The original indictment was filed in the clerk's office on September 21, 2004. The hand-written addition, count five, is dated February 26, 2008, the same date that appears on the "unadjudicated judgment."

community supervision for seven years, commencing on February 26, 2008. Appellant signed a document that stated that the trial court could modify the conditions of supervision at any time during the period of community supervision. *Ex parte Dangelo*, 339 S.W.3d 143, 146 (Tex. App.–Fort Worth 2010)(op. on reh'g).

The original terms of appellant's community supervision did not require him to complete sex-offender treatment. *Id.* In May of 2008, three months later, the trial court modified those conditions to include provisions that required appellant to submit to sex-offender treatment and evaluation, as directed by his supervision officer, complete sex-offender psychological counseling, and submit to, and show no deception on, any polygraph examination ordered by the court or his supervision officer.[2] *Id.* In December of 2008, the state filed its first petition to proceed to adjudication. In January of 2009, the trial court again modified appellant's conditions and required appellant to reside in Tarrant County and to restart his sex-offender treatment, as directed by the supervision officer, but it dismissed the state's petition to proceed to adjudication of appellant's guilt. *Id.*

In March of 2009, appellant's attorney sent to Psycho Therapy Services a letter that stated appellant's objections to any required treatment programs that lie outside those required or have no relationship to the crime to which appellant plead or that relate to conduct that is not itself criminal. *Id.* The letter also stated that appellant "has no objections to polygraph examinations which in the course of your program he may be subjected to," but that he "has Fifth Amendment protection against making any incriminating statements and has a right to so state, relating to any conduct for

---

[2] Also, he was prohibited, among other things, from visiting sex-related businesses, internet pornography sites, social-media sites, or prostitutes, from consumption of alcohol, and from having any contact with three named persons. He was also subject to the restrictions that define child-safety zones. The court of appeals's opinion states the May 2008 modification required appellant to "[a]ssume responsibility of [h]is offense . . .." *Dangelo*, at 146. We do not find that phrase in any of the several probation orders.

which he has not pled or for which he is not on deferred adjudication." *Id*. at 146-47. Attached to that letter was an affidavit from appellant stating that he had been told by one of the Psycho Therapy Services employees that, as part of the sexual-offender treatment program, appellant was required to admit any sexual offense and that "appellant had been notified that if he did not intend to answer questions regarding sexual offenses, he should not attend the therapy session." *Id*. at 147. On April 9, 2009, the state filed its second petition to proceed to adjudication, which alleged that appellant had violated the terms and conditions of his supervision by failing to complete a sex-offender evaluation and that he had been discharged from sex-offender treatment without completing it. Appellant filed a motion to quash the second petition on grounds similar to those raised in the writ applications that are the subject of this appeal, but "[t]he record does not contain any order resolving the State's second petition." *Id*. at 146, n.4.

Appellant points out that, when he was placed on the seven-year deferred-adjudication community supervision, the court's order contained no sex-offender conditions or counseling requirements; it was only when his supervision was transferred to Denton County, where he lived, that sex-offender conditions were added. His first habeas corpus application objected to these conditions. Soon after, the state filed a motion to proceed to adjudication, which was subsequently dismissed, but the condition that required sex-offender counseling was retained.

In July 2009, the trial court found that appellant's bond was insufficient because he had refused to take the ordered polygraph tests and answer the questions to which he objected,[3] and it

---

[3] "If Defendant does not participate in polygraph, bond is insufficient." I C.R. 138, PD-770-11.

issued a warrant for his arrest. *Id*. at 147.[4] Appellant filed additional habeas corpus applications "assert[ing] that he had a constitutional right not to answer the questions that were proposed to be asked in the polygraph exam."[5] *Id*. at 147. The trial court denied relief on these applications.

## The Court of Appeals's Opinion

On direct appeal, appellant filed two separate appeals regarding the same underlying conviction of injury to a child, both appeals challenging the single deferred-adjudication case but on slightly different grounds. He asserted that the trial court's decision to declare his bond insufficient, and thus to incarcerate him because he refused to answer questions that were proposed in the polygraph examination, denied him due process of law because it required him: 1) "to waive his right to remain silent"; and 2) "to submit to an unconstitutional order of probation to attend sex-offender counseling when he has not been convicted of a sex offense." *Id*. at 148.

The court of appeals held "that appellant may not be compelled, over the invocation of his Fifth Amendment right, to participate in any portion of the objected-to community supervision conditions, including the requirement of answering questions two through four of the planned polygraph examination, that would provide a link to his criminal prosecution for any offense unrelated to the injury to a child offense that he pled guilty to." *Id*. at 154. But it also held that appellant "may be compelled to discuss the facts particularly related to counts one through four of his indictment because the State may not use those facts in a future criminal prosecution." *Id*.

---

[4] After appellant filed a motion challenging the trial court's arrest warrant in the court of appeals, the trial court released appellant on a highly restrictive bond.

[5] The four questions which appellant refused to answer are: Since you have been on probation, have you: 1) violated any of the conditions?; 2) had sexual contact with any persons younger than seventeen?; 3) tried to isolate any child for sexual purposes?; and 4) intentionally committed any sexual crimes? *Dangelo*, 339 S.W.3d at 147 and 151-52.

The court of appeals reversed the trial court's denial of appellant's habeas corpus writ applications to the extent that the trial court's decision to incarcerate him was based on his refusal to answer questions two through four of the polygraph examination, but affirmed the trial court's denials of his writ applications in all other respects. *Id*. at 155.

**Petitions for Discretionary Review**

We granted review of the first two grounds of appellant's petitions for discretionary review. Those grounds assert that the court of appeals erred: 1) when it granted immunity to appellant to require him to answer questions put to him on the allegations in the indictment for which he refused to acknowledge guilt, and 2) when it held that appellant may be questioned on the indictment allegations to which no plea was entered. Pursuant to Appellant's brief, those first two grounds "will be addressed jointly as they cover the same facts and general law."

Appellant generally complains of the court of appeals's holding that his "Fifth Amendment rights do not apply to him discussing the limited facts specifically related to counts one through four of his original indictment because the State may not use those facts in a subsequent criminal proceeding, and he cannot be incriminated based on those facts." *Id*. at 153. In ground one, appellant takes issue with the court of appeals's language about his having immunity from prosecution for the other counts of the indictment, for which he refused to acknowledge guilt. In ground two, appellant disputes the court of appeals's holding that he "may be questioned on the indictment allegations to which no plea was entered." Appellant contends that the court of appeals has no authority to grant immunity. He also suggests that the court of appeals has denied him the benefit of his plea bargain; he refused to plead to a sexual offense, consistently denying that he ever committed such an act. But he is now facing the choice of either admitting to a crime he did not commit or having his

probation revoked for not admitting it. Appellant asserts that his "reason for accepting the plea bargain was to avoid this dilemma."

Citing *Minnesota v. Murphy*, 465 U.S. 420 (1984), in which the Supreme Court examined a probationer's Fifth Amendment right against compelled self-incrimination, the court of appeals stated that "[a] probationer could be compelled to talk about independent offenses if the State grants the probationer use-immunity." *Dangelo*, 339 S.W.3d at 151, n.8. The court of appeals also noted the state's acknowledgment that further prosecution of the remaining four indicted offenses was barred by double jeopardy and that appellant had no realistic threat of future criminal prosecution on the facts comprising those alleged offenses. It viewed the state's acknowledgment "as binding concessions that the State will never use the facts relating to the indicted offenses, if any, for a future criminal proceeding on the indicted offenses or new offenses." *Id*. at 153. Accordingly, the court of appeals concluded that appellant's "Fifth Amendment rights do not apply to him discussing the limited facts specifically related to counts one through four of his original indictment because the State may not use those facts in a subsequent criminal proceeding, and he cannot be incriminated based on those facts." *Id*. It specifically ruled that "appellant may be compelled to discuss the facts particularly related to counts one through four of his indictment because the State may not use those facts in a future criminal prosecution." *Id*. at 154.

Appellant asserts that even a defendant on probation "does not lose his right against self incrimination." He adds that "[a] person does not lose his right to assert his Fifth Amendment rights as to other offenses for which he has not been convicted by either pleading guilty or otherwise being convicted of a criminal offense." He cites *Minnesota v. Murphy* and *Chapman v. State*, 115 S.W.3d 1 (Tex. Crim. App. 2003), in support of these principles. He maintains that the court of appeals

erred when it accepted the "assurances" of the state that it would not prosecute him for allegations contained in the indictment and thereby purported to give him use immunity for those crimes, if they even happened, and thus allowing him to be subjected to possible sanctions for refusing to answer the questions and possible prosecution for perjury should the state not believe whatever statements he makes. Appellant also suggests that, if immunity is granted, such immunity goes only to the actual testimony and not to mere conversation with the prosecution and that the appellate court cannot grant a general immunity to questioning that is not testimonial.

The state agrees with appellant that the court of appeals erred in holding that the state had made "binding concessions" that it would never prosecute appellant based on the other allegations in the indictment. But the state acknowledges that, because it did not affirmatively waive, dismiss, or abandon counts one through four of the indictment before the trial court accepted appellant's plea of guilty to count five pursuant to the plea agreement, jeopardy attached to those counts as well. Once jeopardy has attached, the state is barred from prosecuting appellant on those counts in the future, thus appellant cannot now be prosecuted for any of the offenses alleged in the indictment. The state maintains that "it is double jeopardy, and not the concession of the State, that prohibits the State from prosecuting Appellant on any of the other counts in the indictment after he pled guilty to count five." The state also asserts that, because it cannot prosecute appellant again based on the allegations in the same indictment, there is no realistic threat for future prosecution, thus appellant can be required to answer questions regarding other allegations in the indictment after invoking his Fifth Amendment rights. It concludes that, although the court of appeals erred when it held that the state had made a binding concession that it would not prosecute appellant for the other allegations, thus granting some sort of judicial immunity to appellant, the court of appeals came to the correct

conclusion and this Court should affirm.

In a negotiated-plea proceeding, the issue is joined, and jeopardy attaches when the plea agreement is accepted by the trial court. *Ortiz v. State*, 933 S.W.2d 102 (Tex. Crim. App. 1996). The state quotes from *Ortiz* that "[i]t is [at the point of acceptance of a plea agreement by the trial court] that the defendant has a vested interest in the finality of the proceeding" and recognizes that "because [it] did not affirmatively waive, dismiss, or abandon Counts One, Two, Three, and Four of the indictment prior to the trial court's acceptance of Appellant's plea pursuant to the plea agreement, jeopardy attached to those counts as well." State's Brief at 12.

Appellant correctly states that a probationer retains his Fifth Amendment right against self-incrimination concerning statements that would incriminate him in future criminal proceedings. *Chapman v. State*, 115 S.W.3d at 5. The Fifth Amendment provides that no person shall be compelled in any criminal case to be a witness against himself and protects the individual, not only against being involuntarily called as a witness against himself in a criminal prosecution, but also permits him "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future proceedings." *Id.*, *quoting Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). However, in light of the state's concession that double-jeopardy principles preclude it from prosecuting appellant for the four sex-related offenses set out in counts one through four, we agree with the court of appeals's determination that "appellant may be compelled to discuss the facts particularly related to counts one through four of his indictment because the State may not use those facts in a future criminal prosecution." *Dangelo,* 339 S.W.3d at 154. Appellant has no Fifth Amendment right to refuse to answer legitimate questions that are a condition of his community supervision regarding those offenses. Accordingly, we overrule

appellant's grounds one and two and affirm the judgment of the court of appeals.


Delivered: June 20, 2012
Publish