

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00033-CR

LAWRENCE DONOVAN                                                APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

### Introduction

In this direct appeal from a judgment adjudicating guilt, Appellant Lawrence Donovan claims that the trial court violated his due process rights when it revoked his community supervision (probation) for violating terms to which he had acquiesced for over a year.  We affirm.

**Background Facts and Procedural History**

In 2004, a grand jury indicted Appellant for aggravated sexual assault and indecency with a child. In 2006, Appellant pled no contest to injury to a child in exchange for five years' deferred-adjudication probation. The trial court specifically found Appellant not guilty of aggravated sexual assault and indecency with a child and granted his motion to expunge the records relating to those counts.[1]

The trial court judge was replaced after the next election. In March 2008, his successor extended Appellant's probation and modified its terms to require that Appellant submit to an evaluation for sex-offender treatment and successfully complete the prescribed treatment. There is no record that Appellant objected to these terms at the time they were imposed.[2]

In August 2008, Appellant first met with Michael Strain, an approved sex-offender treatment provider, and began group-counseling sessions that September. Strain testified that successful completion of the treatment program generally

---

[1]The parties seem to agree that Appellant was not entitled to an expunction but that the expunction order has not been rescinded. *See* Tex. Code Crim. Proc. Ann. art. 55.01(c) (West Supp. 2011) (prohibiting expunction for person convicted or subject to prosecution for offense arising from same criminal episode as offense for which expunction sought).

[2]The clerk's record shows that Appellant filed a motion to modify the conditions of his probation on February 2, 2009, asserting that the sex-offender-treatment requirements violated due process. There is no record, however, that Appellant presented his motion to the trial court or that the trial court ruled on it. Appellant's counsel conceded at the adjudication hearing that no objection was made to the modified conditions and that Appellant attempted to fully comply with them.

requires that probationers meet thirty goals over a three-year period but that some goals may be waived to accommodate individual circumstances. For instance, the goal of admitting responsibility for a sex offense is commonly waived for persons on probation for non-sex offenses.[3] Strain testified that the trial court had instructed him not to require Appellant to admit that he had committed a sex offense.

In his first year of treatment, Appellant completed eight treatment goals. On August 24, 2009, at a conference between the trial court, prosecutor, Appellant's counsel, Appellant's probation officer, and Strain, all agreed that Appellant could meet the program goals without mentioning or admitting guilt for the expunged sex offenses. The trial court concluded that Appellant would not be required to assume responsibility for those offenses but that he would be required to continue sex-offender treatment and complete its goals. By February 2010, Appellant had completed eleven treatment goals.

On February 3, 2010, Appellant told Strain that he would not discuss the expunged offenses during treatment sessions because it was illegal for him to do so. Strain's recollection of the trial court's instructions was that Appellant was not required to admit responsibility for the original charged offenses but not that it would be illegal to discuss them. He told Appellant that if it was illegal to discuss the sexual nature of the original charges, he was uncertain whether any useful

---

[3]Strain estimated that ten to fifteen percent of defendants in sex-offender treatment are not charged with sex offenses.

treatment work could be done, and pending some clarification of the matter, he discontinued Appellant's treatment.

Appellant testified that his attorneys met with the trial court on February 8, 2010, and that the trial court indicated that it wanted to hear from the probation department on the issue. Appellant's probation supervisor, Mayra Pinedo, testified that she stressed to Appellant that while the matter was pending review he still would be held accountable for meeting his treatment goals by the second-year deadline. She further testified that she offered for him to choose another approved provider so that he could complete the goals. Appellant refused Pinedo's offer to attend treatment with another provider and did not attend any further treatment sessions before the second-year treatment deadline.

The State filed its petition to adjudicate on October 20, 2010, alleging that Appellant had violated his probation by not attending sex-offender treatment and not completing two-thirds of his treatment by the two-year deadline. After a four-day hearing, the trial court granted the State's petition, adjudicated Appellant's guilt, revoked his probation, and sentenced him to four years' confinement.

**Discussion**

Appellant contends that the trial court abused its discretion by revoking his probation upon finding that he failed to attend and complete sex-offender treatment as ordered because in *Ex parte Evans*, 338 S.W.3d 545 (Tex. Crim. App. 2011), the court of criminal appeals "severely curtailed the requirement of Sex Offender Treatment for parolees convicted of non-sex offenses (there, such as here, Injury to

4

a Child.).'' Appellant concedes that *Evans* allows for situations in which a probationer or parolee can be required to attend and complete sex offender treatment as a condition of probation or release, respectively. He appears to argue, however, that he was denied due process when the trial court modified his probation to require him to attend and complete sex offender treatment and that he was only required to submit to these conditions because he had originally been charged with a sex offense. He stresses that the trial court found him not guilty of the originally charged sex offenses that were later expunged.

But this curious history has no bearing on the dispositive issue in this case because whatever merit may lie in Appellant's contentions, *Evans* did not alter, nor does Appellant claim that it altered, the rules for preserving error. It is still the law in this state that a defendant may forfeit constitutional complaints by not raising them in the trial court. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008), *cert. denied*, 555 U.S. 1105 (2009); *Alexander v. State*, 137 S.W.3d 127, 130–31 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (holding that a due process complaint was forfeited by failure to assert the complaint in the trial court).[4]

---

[4]Clearly, the dissent disapproves of the trial court's handling of this matter. And while the majority, too, may not agree with adding sex-offender conditions to probation for a non-sex offense, principles of judicial restraint, the rules of error preservation, this court's precedents and those from the court of criminal appeals all compel us to resist the temptation to reach out and substitute our judgment for the trial court's on issues that—no matter how compelling—are not preserved for our review.

To preserve error for appellate review, a party must make a timely and specific objection or motion at trial, and there must be an adverse ruling by the trial court. Tex. R. App. P. 33.1(a); *Aldrich v. State*, 104 S.W.3d 890, 894–95 (Tex. Crim. App. 2003). In *Speth v. State*, the court of criminal appeals held that to complain about a probation condition on appeal, an appellant must have first challenged the condition in the trial court. 6 S.W.3d 530, 534 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1088 (2000). In *Speth*, the court of criminal appeals also stated that conditions of probation that are not objected to are affirmatively accepted. *Id.*

In *Rickels v. State*, the court of criminal appeals recognized an exception to this general rule of preservation when a defendant does not have an opportunity to object to the probation condition in the trial court at the time the condition is imposed. 108 S.W.3d 900, 902 (Tex. Crim. App. 2003). In *Rickels,* the trial court modified a probation condition without a hearing and Rickels had no opportunity to object to this modification in the trial court. *Id*. In this circumstance, the court of criminal appeals addressed the merits of Rickels's appeal, even though he raised the issue for the first time on appeal. *Id*.; *see also Pearson v. State*, 994 S.W.2d 176, 179 (Tex. Crim. App. 1999) (stating that when defendant does not have opportunity to object at sentencing hearing, a motion for new trial preserves error).

Here, the *Rickels* exception does not apply because the record shows that Appellant had the opportunity to object to the modified conditions. He and the trial judge both signed the conditions. Almost a year afterward, Appellant took steps to

6

object to the conditions, filing a motion to modify, in which he contended that the conditions violated due process, but the record does not show that he ever presented his motion to the trial court or had it ruled on.

The record does show, however, that Appellant's lawyers had a conference with the trial court after Appellant had complied with the conditions for a year, and that during that conference the trial court agreed to waive the treatment goal of Appellant's admitting responsibility for a sex offense. Moreover, at the adjudication hearing Appellant's counsel announced ready and did not argue the issue they now present on appeal. And although counsel for Appellant mentioned in passing at the adjudication hearing that Appellant objected to "being labeled as a sex offender," he conceded that Appellant did not object to the conditions of having to submit to a sex offender treatment evaluation and to complete the prescribed treatment. [5] Further, at the conclusion of the adjudication hearing, counsel urged the trial court to maintain Appellant on probation and acknowledged that Appellant was bound to comply with the conditions if the trial court did so.

---

[5]Addressing the trial court at the adjudication hearing, counsel said,

> [W]hen you ordered that Mr. Donovan go into sex offender treatment, there was no objection to that. He attempted to do exactly what you asked him to do. It seems that he was doing all right in that until the issue came up about the expunction. . . .

> All we're saying is . . . tell us . . . how you want this finished, and let Mr. Donovan finish these goals so he can complete what you've asked him to do. Even though we're – we really object to the fact that he is being labeled as a sex offender, let's put that aside for a moment and say help us . . . and then let him finish the probation.

7

Because the record shows that Appellant did not object to the complained-of conditions by pursuing his motion to amend as a prerequisite to filing an application for writ of habeas corpus[6] or by presenting written objections to the trial court at any point between the time the conditions were imposed and the adjudication hearing—despite his being well-represented by counsel and having multiple opportunities to do so—we hold that Appellant has forfeited his claims for review.  Accordingly, we overrule all of his points and affirm the trial court's judgment.  *See Rickels*, 108 S.W.3d at 902, *Speth*, 6 S.W.3d at 534; *Jackson v. State*, No. 02-09-00258-CR, 2010 WL 5186811, at *4–5 (Tex. App.—Fort Worth Dec. 23, 2010, no pet.) (mem. op., not designated for publication); *see also Beatty v. State*, No. 01-08-00335-CR, 2010 WL 2133870, at *11 (Tex. App.—Houston [1st Dist.] May 27, 2010, pet. ref'd) (mem. op., not designated for publication); *Harrison v. State*, No. 05-08-01362-CR, 2009 WL 3631820, at *3 (Tex. App.—Dallas Nov. 4, 2009, pet. ref'd) (not designated for publication).

---

[6]*See* Tex. Code Crim. Proc. Ann. art. 11.072, § 3(b) (West 2005).

**Conclusion**

Having overruled all of Appellant's points, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED:  July 26, 2012



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00033-CR

LAWRENCE DONOVAN                                        APPELLANT

V.

THE STATE OF TEXAS                                          STATE

----------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

----------

## DISSENTING OPINION

----------

Respectfully, I cannot agree with the majority's conclusion that "despite his being well-represented by counsel and having multiple opportunities to do so[,] . . . Appellant has forfeited his claims for review."[1]  The majority does not explain how Appellant could object when his lawyer did not.  Nor does the majority explain how Appellant could know that Michael Strain, who is neither a judge nor a community supervision officer, would have the power to create conditions of

---
[1]Majority op. at 8.

community supervision that were never ordered by the trial court except by general delegation. Appellant argues that the trial court abused its discretion by revoking his community supervision. I would hold that Appellant is correct.

Appellant was charged by indictment with one count of aggravated sexual assault of a child under seventeen years of age and one count of indecency with a child by contact. The indictment was amended by interlineation to add a third count of bodily injury to a child. Appellant entered his plea of nolo contendere to count three of the indictment pursuant to a plea agreement, and the trial court explicitly acquitted Appellant of the two sexual offenses. The trial court placed Appellant on deferred adjudication community supervision for five years. The trial court also entered an order expunging the records pertaining to the two sexual offenses. There is no record of any opposition by the State to the expunction order. The expunction order itself, however, was inexplicably destroyed.

Subsequently, the trial judge was defeated for reelection, and the new trial judge amended the conditions of Appellant's community supervision to include a requirement that Appellant serve time in jail as a condition of community supervision and that he complete sex offender treatment. The record reflects no grounds for the amendment that had not been before the prior trial judge. Nor does the record reflect whether the amendment was ordered in court or in the community supervision office, whether Appellant was informed that he could object to the amendment or seek advice of counsel, or whether he was represented by counsel when the new trial judge amended the conditions of community supervision.

2

A timeline is necessary to fully understand the issues of forfeiture and preservation:

| | |
|---|---|
| August 23, 2006 | Appellant was acquitted of sexual offenses, convicted of injury to a child, placed on deferred adjudication community supervision for five years, and served with conditions of community supervision. He was not placed on the sex offender caseload. At some point, by agreement with the district attorney's office, an expunction order was entered regarding the sex offenses. |
| August 25, 2006 | The trial court modified conditions of community supervision from "Do not use, possess, or consume any alcoholic beverage" to "No excessive consumption of any alcoholic beverage." |
| March 24, 2008 | The new trial judge extended community supervision for one year and modified conditions of community supervision to "Do not use, possess or consume any alcoholic beverage. Do not refuse a breath, blood, urine or field sobriety test as requested by a peace officer or supervision officer." |
| March 24, 2008 | The new trial judge amended community supervision conditions to place Appellant on the sex offender caseload and to require him to comply with all terms and conditions of the sex offender caseload except registration as a sex offender. |
| November 17, 2008 | The new trial judge amended conditions of community supervision to require "Confinement TCJ as COP 16 days begins Nov. 21, 2008 Fridays by 9 pm and out Mondays by 5 am." |
| December 1, 2008 | The new trial judge amended conditions of community supervision to change the dates of work-release, which she had imposed on November 17, 2008. |

3

| | |
|---|---|
| February 2, 2009 | Appellant's attorney filed "DEFENDANT'S MOTION FOR MODIFICATION OF CONDITIONS OF PROBATION." Appellant's motion states that "the only reason his conditions of probation were amended to require successful completion of the sex offender treatment program was because of Judge Westfall's concern over the Community Supervision Community Development's report to her that [Appellant] had originally been charged with sex offenses—the same offenses for which he had been found not guilty, and for which the Tarrant County District Clerk's Office records were expunged." This statement was never controverted by the State. |
| August 24, 2009 | En camera meeting with lawyers occurred. |
| October 20, 2010 | The State filed its "FIRST PETITION TO PROCEED TO ADJUDICATION." The trial court issued an alias capias for the arrest of Appellant and ordered him held without bond. |
| October 26, 2010 | Appellant's attorney entered a notice of representation. The trial court set bond and imposed conditions. |
| November 3, 2010 | The warrant for Appellant's arrest was executed. |
| January 7, 2011 | The hearing on the State's motion to proceed to adjudication began. |
| January 18, 2011 | The trial court granted the State's motion, adjudicated Appellant's guilt, and imposed a four-year sentence. |

Appellant participated in the sex offender treatment program until he was required to discuss the facts of the two offenses of which he had been acquitted. Michael Strain had been given a copy of the offense report containing descriptions of the expunged offenses as well as descriptions of the offense of which Appellant

4

had been convicted. When Strain told Appellant that he would have to discuss the facts of the allegations upon which the expunged offenses were based, Appellant told Strain that it was illegal for him to comply with Strain's requirement. The majority does not address this issue, holding, instead, that Appellant did not object. Although his lawyer did not object until he had opportunity, Appellant clearly objected when he told Strain that he could not comply with Strain's directive. Appellant was not in court, and there is no showing that he was aware of the proper procedure for complaining about a condition of community supervision or that he knew the proper vehicle for lodging a legally valid objection. But Appellant was correct when he told Strain that it was illegal for him to discuss expunged cases.

Article 55.03 of the Texas Code of Criminal Procedure provides,

> When the order of expunction is final:
>
> (1) the release, maintenance, dissemination, or use of the expunged records and files for any purpose is prohibited;
>
> (2) except as provided in Subdivision (3) of this article, the person arrested may deny the occurrence of the arrest and the existence of the expunction order; and
>
> (3) the person arrested or any other person, when questioned under oath in a criminal proceeding about an arrest for which the records have been expunged, may state only that the matter in question has been expunged.[2]

As the majority acknowledges,

> Strain's recollection of the trial court's instructions was that Appellant was not required to admit responsibility for the original charged

---

[2]Tex. Code Crim. Proc. Ann. art. 55.03 (West 2006).

5

offenses but not that it would be illegal to discuss them. He told Appellant that if it was illegal to discuss the sexual nature of the original charges, he was uncertain whether any useful treatment work could be done, and pending some clarification of the matter, he discontinued Appellant's treatment.[3]

That is, Appellant did not abandon Strain's program. Strain abandoned him because Appellant understood article 55.03 to mean that dissemination of the facts and allegations contained in the expunged records was prohibited. The trial court did not explain to Appellant how the statute did not apply to him. Other requirements of the sex offender caseload included detailed discussions of Appellant's sexual history, polygraph tests regarding sexual activity, and other admissions regarding "victims."

Like the applicant in *Ex parte Evans*, who was successful on parole for eighteen months before the Texas Department of Criminal Justice unlawfully added sex offender conditions to his conditions of parole,[4] Appellant was doing well on community supervision until the trial court amended his conditions to place him on the sex offender caseload. The new trial judge clearly stated on the record that she did not agree that the expunction should have been granted by the prior trial judge. Her statements included, "So he got an illegal expunction." She also referred to it as a "baseless expunction." She maintained her position, despite the facts that, as

---

[3]Majority op. at 3–4.

[4]338 S.W.3d 545, 546, 553, 556 (Tex. Crim. App. 2011).

6

pointed out to her, the district attorney's office had agreed to the expunction, and it had not been appealed.

When Appellant was placed on the sex offender caseload, he was apparently in compliance with the conditions of his community supervision. He had a long-standing ministry with the Roman Catholic Church, was a decorated Air Force veteran who had served during the Vietnam War era, and was employed as a nuclear physicist with the United States Nuclear Regulatory Commission. He had earned two masters degrees and had received a bachelor of science and physics degree from Duke University. As was the case for the applicant in *Ex parte Evans*,[5] Appellant's life quickly went downhill after being placed on the sex-offender caseload.

Due process requires a rational relationship between the offense and the obligations of community supervision. If restitution is ordered, a defendant may be ordered to pay restitution only to the complainants in the cases of which he was actually convicted.[6] There must be not only a rational relationship between the offense and the conditions of community supervision but also recognition of the constitutional rights of the probationer. A probationer cannot be ordered to do an

---

[5]*Id.* at 548.

[6]*Martin v. State*, 874 S.W.2d 674, 677 (Tex. Crim. App. 1994).

act that violates his constitutional rights as balanced with the goals of community supervision.[7]

The record does not reflect any action by Appellant that justifies the trial court's transferring him to the sex offender caseload. From the record, the transfer appears to have been ordered because the new trial judge did not agree with the ruling of the former trial judge in acquitting Appellant of the two sex offenses and granting the agreed-upon expunction.

The State argues, and the majority holds, that Appellant should have objected to the amended conditions of community supervision. But the order provides no notice to Appellant that he would be required to discuss sex offenses of which he had been acquitted as well as possible offenses with which he had never been charged. When Appellant learned that he was expected to admit to those offenses, he objected to Mike Strain. The trial judge did intervene, then, to countermand Strain's requirement that Appellant actually admit to the offenses of which he had been acquitted.

The record does not reflect that Appellant was represented by counsel when the trial court amended his conditions of community supervision or even that the amendment occurred in open court. Nor is there any indication that Appellant was aware either of his ability to object or of what the amendments to his conditions of

---

[7]*Ex parte Dangelo*, 339 S.W.3d 143, 148–49 (Tex. App.—Fort Worth 2010), *aff'd*, Nos. PD–0769–11, PD–0770–11, 2012 WL 2327813 (Tex. Crim. App. 2012).

community supervision entailed. As the Supreme Court of the United States explained in regard to statements made in response to custodial interrogation,

> The abdication of the constitutional privilege—the choice on his part to speak to the police—was not made knowingly or competently because of the failure to apprise him of his rights; the compelling atmosphere of the in-custody interrogation, and not an independent decision on his part, caused the defendant to speak.
>
> . . . .
>
> At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it—the threshold requirement for an intelligent decision as to its exercise. More important, such a warning is an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere. It is not just the subnormal or woefully ignorant who succumb to an interrogator's imprecations, whether implied or expressly stated, that the interrogation will continue until a confession is obtained or that silence in the face of accusation is itself damning and will bode ill when presented to a jury. Further, the warning will show the individual that his interrogators are prepared to recognize his privilege should he choose to exercise it.
>
> The Fifth Amendment privilege is so fundamental to our system of constitutional rule and the expedient of giving an adequate warning as to the availability of the privilege so simple, we will not pause to inquire in individual cases whether the defendant was aware of his rights without a warning being given. Assessments of the knowledge the defendant possessed, based on information as to his age, education, intelligence, or prior contact with authorities, can never be more than speculation; a warning is a clearcut fact. More important, whatever the background of the person interrogated, a warning at the time of the interrogation is indispensable to overcome its pressures and to insure that the individual knows he is free to exercise the privilege at that point in time.
>
> The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware

9

not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest.[8]

A defendant in a criminal case does not lose his right against self-incrimination under either the Constitution of the United States or the Constitution of the State of Texas when he is placed on community supervision.[9] Yet the trial court granted the State's motion to proceed to adjudication because Appellant refused to discuss underlying facts of the cases of which he had been acquitted and which had been expunged and refused to discuss sexual activity that might reveal acts for which he could be criminally prosecuted. Essentially, the trial court revoked Appellant's community supervision and proceeded to adjudication of his guilt because he invoked his constitutional right not to provide evidence against himself, resulting in Strain's expelling Appellant from his sex offender program.

I would hold that the trial court abused its discretion (1) by placing Appellant on the sex offender caseload, (2) by ordering, without hearing or benefit of counsel, jail confinement as a condition of community supervision, (3) by delegating to Mike Strain the authority to set the conditions of community supervision, (4) by requiring Appellant to discuss the details of offenses of which he had been acquitted and the

---

[8]*Miranda v. Arizona*, 384 U.S. 436, 465–69, 86 S. Ct. 1602, 1623–25 (1966) (citations omitted).

[9]*Dangelo*, 2012 WL 2327813, at *4.

10

records which had been expunged, and (5) by requiring Appellant to discuss uncharged sexual activity which could have been illegal. I would also hold that the trial court abused its discretion by revoking Appellant's community supervision because of his attempt to comply with article 55.03. That is, I would hold that the trial court abused its discretion by revoking Appellant's community supervision and proceeding to adjudication because the trial court found that Appellant, who had not been convicted of a sex offense, had failed to comply with the sex offender caseload conditions promulgated by a person who was neither a judge nor a community supervision officer and based on records which had been ordered expunged and Appellant's refusal to reveal facts that could lead to his criminal prosecution.

Because the majority does not so hold, I must respectfully dissent.


LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: July 26, 2012

11