**AFFIRM; and Opinion Filed January 22, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-00866-CR

**MICHAEL EDWARD DANSBY, SR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court**
**Kaufman County, Texas**
**Trial Court Cause No. 25891-CC**

## MEMORANDUM OPINION ON REMAND

Before Justices Bridges, Myers, and Richter[1]
Opinion by Justice Myers

Michael Edward Dansby, Sr.'s appeal from the trial court's revocation of his community supervision and adjudication of his guilt for indecency with a child is before us on remand. On original submission, appellant argued in two issues that the trial court abused its discretion in finding he violated two conditions of his community supervision because those violations resulted from an assertion of his Fifth Amendment privilege against self-incrimination. The two conditions were part of appellant's sex offender terms and conditions, numbered thirty and thirty-six. Under condition thirty, appellant was required to submit to and pass a polygraph

---

[1] The Hon. Martin Richter, Justice, Assigned. The Hon. Mary L. Murphy, Retired Justice, was a member of the panel when the appeal was originally submitted, but due to her resignation from this Court on June 7, 2013, she did not participate in the case on remand.

examination upon request; under condition thirty-six, he was required to participate in and abide by all rules and conditions of a court-approved sex offender treatment program.

One of the two types of polygraph examinations covered by condition thirty was the sexual history disclosure polygraph, which was designed to explore appellant's sexual history, including sexual crimes and other deviant sexual behavior involving additional victims, occurring before appellant was placed on community supervision.[2] This polygraph examination was administered in conjunction with appellant's sex offender treatment program and was considered to be a "necessary part" of the treatment process. Appellant scheduled his sexual history disclosure polygraph and participated in the pre-test interview portion of the examination. But when the examiner asked appellant if he had "any other victims," appellant refused to answer, citing his attorney's advice not to say anything that might result in prosecution. The examiner terminated the examination because that question went to the "heart" of the exam. He also notified appellant's probation officer.

Although appellant was instructed by his probation officer to re-schedule the polygraph or risk discharge from his sex offender treatment program, appellant did not do so and ultimately was discharged from the program. Nine days later, the State initiated proceedings to revoke appellant's community supervision and adjudicate his guilt. The State alleged appellant violated condition thirty when he "refused to obtain a sexual history polygraph" as requested and condition thirty-six by "fail[ing] to attend and successfully complete" his sex offender treatment program. The trial court found appellant violated both conditions, granted the State's motion to revoke, and sentenced appellant to eighteen years in the Institutional Division of the Texas Department of Criminal Justice.

---

[2] The other type of polygraph examination was the maintenance polygraph, which was designed to address violations of appellant's community supervision that may have occurred during appellant's community supervision. Appellant took and passed two maintenance polygraph examinations over the course of his community supervision.

Appellant challenged the trial court's findings that he violated conditions thirty and thirty-six on original submission. He argued that he may not be compelled, over the invocation of his Fifth Amendment privilege, to answer questions, such as those about other sexual crimes involving "victims" posed to him during the sexual history disclosure polygraph, which would provide a link to his prosecution for other crimes. Appellant claimed the trial court abused its discretion in finding he violated condition thirty by refusing to take the sexual history disclosure polygraph because the record showed that violation resulted from the assertion of his Fifth Amendment privilege against self-incrimination. He further claimed the trial court abused its discretion in finding he violated condition thirty-six by not completing his sex offender treatment program because the record showed his discharge from the program derived from his not wanting to incriminate himself during the polygraph or counseling sessions. He maintained the trial court punished him for electing to remain silent when it revoked his community supervision, adjudicated his guilt, and assessed an eighteen-year prison term.

In affirming the trial court's judgment, we did not reach the Fifth Amendment issue raised by appellant as a part of his challenge to the trial court's findings that he violated the conditions of his community supervision. *Dansby v. State*, No. 05-10-00866-CR, 2012 WL 1150530, at *5 (Tex. App.—Dallas Apr. 9, 2012), *rev'd*, 398 S.W.3d 233 (Tex. Crim. App. 2013). Rather, we limited our review to appellant's challenge to the trial court's finding that he violated condition thirty-six because he did not complete the sex offender treatment program. *Id.* at *4. We determined that after viewing the evidence in the light most favorable to the trial court's judgment, as we must under the applicable standard of review, the trial court could have held a reasonable belief that appellant violated condition thirty-six by not completing the required sex offender treatment program for reasons other than invoking his Fifth Amendment privilege. *Id.* at *4–5. We concluded the trial court did not abuse its discretion because proof of

any one violation is sufficient to support a revocation. *Id.* at *5 (citing *Lee v. State*, 952 S.W.2d 894, 897 (Tex. App.—Dallas 1997, no pet.) (en banc)).

The Texas Court of Criminal Appeals disagreed, stating we "avoided the constitutional issue" by relying on the principle that the State must prove "'only one of the violations alleged in the motion to revoke or proceed to judgment in order to authorize the trial court to revoke community supervision or proceed to judgment.'" *Dansby*, 398 S.W.3d at 240 (quoting George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 48:57, at 436 & n.1 (3d ed. 2011)). The court said "this approach can work only if the violation upon which the reviewing court relies to uphold the trial court's ruling is itself unquestionably free of constitutional taint." *Id.* at 241. The court determined the record here showed a strong inference that appellant's "unwillingness to incriminate himself was the *deciding* factor in discharging him from the sex offender treatment program." *Id.* And it held that we erred in concluding appellant's discharge from the sex offender treatment program was not a product of his invocation of a Fifth Amendment privilege. *Id.* at 240. The court remanded the case to us to address the merits of appellant's Fifth Amendment arguments. *Id.* at 239, 243.

The court of criminal appeals recognized that in considering appellant's constitutional claim on remand, we also must address the State's contention that appellant failed to preserve his issues for appeal. *Id.* at 243 n.18 (declining to address preservation argument for first time on discretionary review). The State contends that because appellant did not object to the specific conditions on Fifth Amendment grounds at the time they were imposed, or at any reasonable time thereafter, appellant has forfeited his complaints for appeal. Because we agree with the State, we affirm the trial court's judgment on remand.

**APPLICABLE LAW**

"An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant." *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). A defendant who benefits from this contractual privilege of community supervision, the granting of which does not involve a systemic right or prohibition, "must complain at trial to conditions he finds objectionable." *Id.*; *see also Wiley v. State*, 410 S.W.3d 313, 318 (Tex. Crim. App. 2013). If a defendant does not object to the community supervision conditions at trial, he affirmatively accepts them and "waives any rights encroached upon by the terms of the contract." *Speth*, 6 S.W.3d at 534. This rule, however, assumes the defendant was aware of the condition of community supervision "in time to object at trial." *Id.* at 534 n.9; *see also Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Rickels v. State*, 108 S.W.3d 900, 902 (Tex. Crim. App. 2003); *cf. Miller v. State*, No. 05-99-01740-CR, 2001 WL 6790, at *2 (Tex. App.—Dallas Jan. 3, 2001, no pet.) (not designated for publication) (addressing point of error in the interest of justice when record not clear whether probationer knew of condition's requirement at time imposed). And it does not apply to conditions that violate an absolute prohibition or systemic requirement; those types of conditions are not subject to "ordinary principles of waiver or procedural default" and may be challenged on that basis for the first time on appeal. *Gutierrez v. State*, 380 S.W.3d 167, 177 (Tex. Crim. App. 2012) (holding condition that "effectively operates to deport a probationer violates an absolute prohibition"); *cf. Lee*, 952 S.W.2d at 898 (citing *Borgen v. State*, 672 S.W.2d 456, 460 (Tex. Crim. App. 1984)) (noting that almost every right, constitutional or statutory, may be waived by the failure to object).

The rule that a defendant must object to the conditions at trial or waive his complaints on appeal is consistent with rule of appellate procedure 33.1(a), which requires a defendant to make

a timely and specific objection or motion at trial to preserve his complaint for appellate review. TEX. R. APP. P. 33.1(a)(1)(A). Appellate courts will not consider any error that could have been called, but was not called, to the attention of the trial court at the time when such error could have been avoided or corrected by the trial court. *Rogers v. State*, 640 S.W.2d 248, 264 (Tex. Crim. App. [Panel Op.] 1981) (op. on State's second motion for reh'g); *Lee*, 952 S.W.2d at 898; *see also Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (reviewing court should not address merits of unpreserved issue).

## DISCUSSION

The State charged appellant in 2007 with the offense of aggravated sexual assault of a child. Pursuant to a plea agreement dated July 9, 2008, appellant pleaded guilty to the lesser offense of indecency with a child, and the trial court placed appellant on deferred-adjudication community supervision for a period of five years. The terms of his community supervision specified he would be subject to "sex offender terms and conditions" that were included as conditions thirty through thirty-six in an order modifying the original community supervision terms. The record shows the parties signed the order modifying the original conditions on the same day as the original order, July 9, 2008, and that the trial judge signed the modified order on July 16, 2008. By signing both orders, appellant acknowledged that he read and understood "each of the conditions of community supervision" and agreed "to comply with the conditions set forth in the order modifying" the original order.

Appellant does not dispute that he did not challenge the conditions in question at the time they were assessed by the trial court. Nor does he claim his complaints concern a nonwaivable absolute right. *See Gutierrez*, 380 S.W.3d at 177. Rather, he distinguishes *Speth* and argues that because he is not challenging the *imposition* of conditions thirty and thirty-six—that is, he does not complain the conditions "were improperly included as part of [his] numerous probation

conditions"—he should not be "procedurally barred" from advancing his Fifth Amendment argument on appeal simply because he agreed to abide by the specific conditions.

Appellant refused to complete the sexual history disclosure polygraph and answer certain questions during counseling sessions because he claimed he did not want to say anything that might result in future prosecution. He contends that as a result, his probation was revoked and he was sentenced to prison. He appeals on the basis that the trial court abused its discretion when it revoked his community supervision and adjudicated his guilt because he exercised his Fifth Amendment right against self-incrimination. While we agree the Fifth Amendment gave appellant the right not to answer questions that may provide a link to future prosecution, and the fact that he was on community supervision did not affect this right,[3] we cannot agree the issue appellant raises on appeal was not a challenge to the content of the specific conditions of his community supervision.

Under *Speth*, a defendant who benefits from the contractual privilege of community supervision must complain at trial to conditions he should reasonably question and find objectionable. *Speth*, 6 S.W.3d at 534. The record shows that during the course of the original investigation, the investigating officer documented and reported information that there were other victims.[4] Specifically, the officer wrote in the summary report:

> After speaking with the suspect, I received calls from three other family members in which they all stated the suspect had committed some type of sexual contact with them at different occasions when they were small. One subject stated, the

---

[3] *See, e.g.*, *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (privilege permits accused "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answer might incriminate him in future criminal proceedings"); *Chapman v. State*, 115 S.W.3d 1, 5–6 (Tex. Crim. App. 2003) (fact of probation did not diminish probationer's Fifth Amendment privilege); *cf. Ex parte Dangelo*, 376 S.W.3d 776, 782 (Tex. Crim. App. 2012) (Cochran, J., concurring) ("[J]udicial requirement that a probationer take a polygraph examination concerning sexual matters qualifies as a 'proceeding' for purposes of the Fifth Amendment right against self-incrimination.").

[4] This information was provided in the Pre-Sentence Investigation Report, prepared as part of the revocation proceedings. Information from the investigation conducted by Terrell police officers in December 2006 and January 2007 was reviewed and included as part of the report.

last incident was when he was 20 years old; the suspect cornered him in the bath room wanting either oral sex or anal sex.[5]

Despite a report of other victims, appellant signed the orders and agreed to the conditions requiring him to, among other things, "submit to" and pass a polygraph examination upon request and "abide by the rules and regulations" and successfully complete a sex offender program. And instead of questioning the conditions that required him to take and pass a polygraph examination, which also was a "necessary part" of his sex offender treatment program, he violated the agreement and cloaked his violation in a constitutional right.

If appellant had complained about the specific conditions at the time—or at any point between the time the conditions were imposed and the adjudication hearing—the trial court would have had the opportunity to either risk abusing his discretion by imposing the conditions over his objection or reconsider the desirability of the contract without the objectionable conditions. *Id.* at 534–35. Or the threat of incrimination could have been removed through the grant of use immunity by the State. *See Murphy*, 465 U.S. at 435 & n.7 ("[A] state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination."); *Ex parte D'Angelo*, 376 S.W.3d at 783 (noting that if State wishes to compel answers to questions that could show a new criminal offense, it must provide use immunity before compelling any answer); *Chapman*, 115 S.W.3d at 7–8 & n.28 (probationer can be compelled to testify against himself if State grants probationer use-immunity); *see also Kastigar v. United States*, 406 U.S. 441, 453 (1972) (holding that immunity from use and derivative use is coextensive with the scope of the privilege against self-

---

[5] The pre-sentence report also states: "After victim tells, and the family discovers what's going on, turns out that the defendant has been molesting family members for decades, maybe for 40 years. Several have begun to talk. Statu[t]e has run in several cases–probably."

incrimination).[6]  Appellant chose to bargain for an "extension of clemency," and he made an agreement with the trial court that kept him out of prison.  *Speth*, 6 S.W.3d at 534.  By doing so, appellant affirmatively accepted the conditions and waived any rights encroached upon by the terms of the agreement he made with the trial court.  *Id.*

Appellant also contends his agreement to abide by conditions thirty and thirty-six did not, without more, constitute a "knowing" waiver of his constitutional protections against self-incrimination during the term of his community supervision.  He claims that nothing in his conditions specified he was required to waive "any protections with regard to compelled self-incrimination," and neither the agreed-to conditions nor the intake paperwork he signed when he entered the sex offender treatment program mentioned a waiver of the privilege.  The record, however, shows appellant knew that the sex offender conditions included a polygraph examination during which he would be asked to disclose his past sexual history.

At the hearing on his open plea, appellant was informed about the consequences of his plea and questioned about whether he "want[ed] to take the deal the State has offered."  The trial judge also questioned appellant about his understanding of the terms and conditions of his community supervision, including the sex offender terms and conditions:

> THE COURT:  Have you had a chance to go over the terms and conditions of probation with [your attorney]?
>
> [Appellant]:  Yes, Your Honor.
>
> THE COURT:  And you understand it?
>
> [Appellant]:  Yes, sir.

---

[6] The record shows that in the time leading up to appellant's discharge from the sex offender treatment program in August 2009, there were discussions about "Immunity Agreements, that were ordered by [the court]."  But there is nothing in the record showing that the State granted any assurance of immunity or that appellant pursued the grant of such immunity agreements.

> [Prosecutor]: In addition, Your Honor . . . I would like to inquire whether or not [appellant's attorney] has gone over the special terms and conditions for sex offenders that will be applicable to this case?
>
> [Appellant's Attorney]: We have, Your Honor.
>
> THE COURT: Okay. And you understand those?
>
> [Appellant]: Yes, sir.

The trial judge also admonished appellant as a sex offender:

> THE COURT: [Appellant], there are various conditions that go along with this type of offense, such as needing to register as a sex offender and needing to keep that up-to-date. . . . And I assume you have talked to [your attorney] about what these conditions are?
>
> [Appellant]: Yes, sir.
>
> THE COURT: You have discussed all the ramifications of the sex offender plea?
>
> [Appellant's attorney]: We understand there will be continued sex offender registration even after the period of probation has been satisfied.

During the punishment phase of the revocation proceedings, appellant acknowledged that when he pleaded guilty, he knew he would be placed on community supervision and subject to the specific community supervision terms and conditions. He also acknowledged the subsequent order modifying the terms of his community supervision that added additional terms and conditions, which were the sex offender terms and conditions numbered thirty through thirty-six. He testified that at the time the trial court entered the order modifying his original community supervision terms, he was told he "would have to do a sexual history polygraph." Although he said there was "no discussion about what it entailed," there was a clear opportunity at this point in time to ask about what that polygraph entailed or object to the specific condition requiring him to take and pass a sexual history disclosure polygraph. *See id.* at 534 n.9; *Rickels*, 108 S.W.3d at 902. Appellant did neither.

The record also shows there were other opportunities for appellant to challenge the conditions that would require him to disclose his past sexual history (in counseling or when he took the sexual history disclosure polygraph) and obtain a ruling from the trial court before he violated the agreement he made with the trial court. For example, on September 4, 2008, appellant's sex offender counselor administered an assessment that evaluated areas of sexual interest and arousal. The results of that assessment indicate appellant was asked questions related to specific deviant sexual behaviors in which appellant had engaged or had an interest. The fact that appellant would undergo this type of psychological and sexuality testing also was disclosed on a consent form, which appellant signed in September 2008. The consent form specified that the data gathered through the testing would be used to identify and develop hypotheses about any sexual problems appellant may be experiencing, including "deviant or atypical sexual behaviors."

The chronological activity log prepared by appellant's probation officer shows that during or after an office visit with appellant on September 8, 2008, the probation officer called appellant's counselor and discussed the need to have appellant complete a polygraph in October 2008 or appellant "will be discharged from Counseling unsuccessfully." He noted the counselor wanted to know if appellant "is fantasying about having sexual contact with minors." Appellant took a maintenance polygraph in October 2008, and during his next visit with his probation officer, they discussed how appellant would be required to take another polygraph in April 2009, which was the sexual history disclosure polygraph. Additionally, months before appellant's scheduled sexual history disclosure polygraph, appellant was asked to complete a "PSYCHOSEXUAL LIFE HISTORY" questionnaire that solicited responses to a number of questions related to appellant's sexual experiences, including whether appellant had engaged in

–11–

certain sexual behaviors involving children.[7]  When appellant appeared for the sexual history

disclosure polygraph, he signed a consent form in which he acknowledged he understood that he

would be asked "questions of a sexual nature."  He specifically gave permission for the attorney

who represented him at the time of his plea to receive the results of his polygraph.  Other

testimony presented during the adjudication hearing also shows that appellant was counseled

numerous times—by his counselor, participants in his sex offender group counseling sessions,

and the polygraph examiner—on how to be compliant with the polygraph requirement without

creating a new offense for which he could be prosecuted.

The record shows appellant knew the terms of his community supervision and that as part

of the conditions, he would be required to disclose his past sexual history.  The record also

shows appellant knew there would be a problem if he disclosed some of his past sexual history.

Yet nothing in the record shows he brought the issue to the attention of the trial court such that

the judge could flesh the issue out.[8]  That is, appellant did not take any steps to object to the

conditions by raising Fifth Amendment grounds or complain that the conditions were

impermissible on any other grounds.  Thus, under the agreement he made with the trial court, he

was bound to perform them or have the privilege of his community supervision revoked.  We

conclude appellant's failure to timely object in the trial court (despite his being well-represented

---

[7] For example, appellant was asked whether he had "daydreams about having sex play with younger children," raped a child, exposed himself to a child, peeped on a child, or sexually touched a little boy or girl.  He also was asked whether he had "molested a lot of children" and when he "began having sex play with younger children."  On an additional handwritten sheet, appellant was asked to list "all Sexual Experiences—Beginning as far back as you can remember to the present" and "all Parties involved, their ages and gender" and any "deviant sexual outlets."

[8] The Texas Code of Criminal Procedure provides additional support for the proposition that the issue should be brought to the trial court's attention for resolution of the problem before the person violates a term of his community supervision.  *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 42.12, § 13B(a), (e) (West Supp. 2013) (addressing defendants placed on community supervision for sexual offenses against children).  Under article 42.12, section 13B, a trial judge, who places a defendant on community supervision for sexual offenses against children, shall establish a child safety zone applicable to the defendant as a condition of his community supervision.  *Id.* art. 42.12, § 13B(a).  But at any time after the imposition of the child-safety-zone condition, the defendant may request a modification of the condition because the zone created by the trial judge creates a problem for the defendant.  *Id.* art. 42.12, § 13B(e).  Although the code of criminal procedure does not enumerate every situation that could create a problem for a defendant placed on community supervision for a sexual offense against a child, we can infer from this provision that if there is a problem, the proper procedure would be for the defendant to bring the issue to the trial court's attention so the judge can decide the issue.  *Cf. Speth*, 6 S.W.3d at 534–35 ("A trial objection allows the trial court the opportunity to either risk abusing his discretion by imposing the condition over objection or reconsider the desirability of the contract without the objectionable condition.").

by counsel and having multiple opportunities to do so) has resulted in procedural default and appellant's issues have not been preserved for our review. TEX. R. APP. P. 33.1(a)(1)(A); *Speth*, 6 S.W.3d at 534. Accordingly, we overrule appellant's issues and affirm the trial court's judgment on remand.

/Lana Myers/
_____
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
100866RF.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL EDWARD DANSBY SR.,
Appellant

No. 05-10-00866-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court, Kaufman
County, Texas
Trial Court Cause No. 25891-CC.
Opinion delivered by Justice Myers.
Justices Bridges and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of January, 2014.

/Lana Myers/
LANA MYERS
JUSTICE